684 P.2d 1127

**The KIRK COMPANY,**
**Plaintiff-Appellee,**

v.

**W.R. ASHCRAFT, Defendant-Appellant.**

No. 14957.

Supreme Court of New Mexico.

June 12, 1984.

Thomas L. Johnson, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendant-appellant.

J. Wayne Woodbury, Silver City, for plaintiff-appellee.

## OPINION

WALTERS, Justice.

Plaintiff Kirk Company sued defendant W.R. Ashcraft to recover the purchase price on a contract for the sale of Christmas trees. Defendant counterclaimed for breach of contract, alleging that the trees were not delivered on time and were not of the quality warranted. The jury awarded plaintiff $16,566.41, and found against defendant on his counterclaim.

In this appeal, defendant contends that (1) certain of defendant's requested jury instructions were erroneously refused; (2) it was reversible error to give Jury Instruction 1; (3) plaintiff's witness was improperly allowed to testify over defendant's objection to matters about which he had no personal knowledge; and (4) certain of plaintiff's exhibits were erroneously admitted into evidence. We reverse on the first issue and discuss the other points raised because a new trial will be necessary.

In November, 1980, plaintiff contracted to sell 2,765 Christmas trees to defendant, who made a down payment of $5,000 on the total price of $21,566.41. The contract provided for the delivery of "premium quality" trees between December 1 and December 5, 1980. The trees were sent in three shipments, the first two arriving in the afternoon and evening of December 5. The third shipment arrived on December 7. Upon receipt of the trees, defendant distributed them to his retail outlets and attempted to sell them. Defendant made no further payments on the contract, and plaintiff, in April, 1981, brought an action to recover the balance of the purchase price.

**1. Requested Jury Instructions**

The jury was instructed, pursuant to NMSA 1978, UJI Civ. 17.2, 17.3 (Repl. Pamp.1980), and Article 2 of the Uniform Commercial Code, NMSA 1978, Sections 55-2-101 to -725 (Orig.Pamp. and Cum. Supp.1983), that the defendant could recover damages under either of two sets of circumstances: (1) if the defendant rightfully rejected or revoked his acceptance of all or part of the trees or, (2) if the defendant accepted the trees, but some or all of the trees did not conform to the terms of the contract. However, a portion of Jury Instruction 3 read as follows:

> If a buyer exercises ownership with respect to the goods after rejection or revocation of acceptance, then such rejection or revocation is no longer effective.

Defendant contends that this part of the instruction is an incomplete statement of the law and that his Requested Instructions 5 and 7, restating NMSA 1978, Section 55-2-603 and NMSA 1978, Sections 55-2-711, 55-2-706, respectively, should have been adopted. Those requested instructions were:

5. The mere act of the buyer selling the trees after delivery does not, in and of itself, constitute acceptance. A buyer is under an obligation to make reasonable efforts to sell trees for the seller's account if they are perishable or threatened to decline in value. If a buyer sells trees that are perishable or threatened to decline in value, he is entitled to reimbursement from the seller or out of the proceeds of sale to obtain reasonable expenses of caring for and selling the trees, including commissions.

7. Upon rightful rejection or justifiable revocation of acceptance a buyer has a security interest in the trees in his

possession for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold the trees and resell them in a commercially reasonable manner.

█ We agree with defendant. There was evidence to support the instructions on the defendant's alleged rejection or revocation of acceptance of the trees (both plaintiff and defendant requested instructions on this issue); consequently, defendant was entitled to have the jury fully informed on the law with respect to rejection or revocation. Defendant's requested Instructions 5 and 7 were correct statements of the law contained in Sections 55–2–603 and 55–2–711. Considering the jury's verdict, it could be argued that the jury found the tender of the trees to be in conformance with the terms of the contract (at least with respect to the trees delivered on December 5th), and thus the refusal of defendant's requested Instructions 5 and 7 was harmless error because rejection or revocation of conforming goods would not be rightful. It is equally arguable, however, that the failure of the trial court to fully instruct the jury on defendant's rights with respect to rejected trees may well have adversely influenced the jury's view of defendant's claim that the trees were not of "premium quality." The jury was entitled to a full exposition of defendant's rights in a commercial transaction of the nature before it, and it was error for the trial court to deny defendant's Requested Instructions 5 and 7.

After advising the jury that "[t]he trees were to be of premium quality and to be delivered by plaintiff to defendant between December 1 and December 5, 1980," the trial court instructed, in pertinent subdivisions of Jury Instruction 3, as follows:

2. The general obligation of the seller is to transfer and deliver goods in accordance with the contract. The general obligation of the buyer is to accept and pay for the goods in accordance with the contract.

3. If the trees or the delivery of the trees failed to conform to the terms of the contract between the seller and buyer, the buyer can

(a) reject all the trees,

(b) accept all the trees, or

(c) accept any loads of trees and reject the rest.

4. Acceptance of goods is when the buyer:

(a) after a reasonable opportunity to inspect the trees, signified to the seller that the trees conformed to the contract or that he would retain them even though they did not conform, or

(b) after a reasonable opportunity to inspect the trees, the buyer fails to make an effective rejection of the trees;

(c) the buyer does an act inconsistent with the seller's ownership of the trees.

5. Rejection of trees must be within a reasonable time after their delivery. A rejection is ineffective unless the buyer notifies the seller within a reasonable time.

\*  \*  \*  \*  \*  \*

10. Even though a buyer has accepted goods or not effectively rejected the goods or revoked his acceptance, he may still recover damages with respect to any goods that did not conform to the contract.

Defendant had requested the following instructions, which he claims were improperly refused:

1. The buyer has the right before payment or acceptance to inspect the trees at any reasonable place and time and in any reasonable manner. The inspection may be after arrival.

\*  \*  \*  \*  \*  \*

3. The "performance" of a duty under a contract consists of doing the things

agreed to be done at the time and place and in the manner called for by the terms of the contract. In this case the plaintiff had the duty to deliver Christmas trees between the dates of December 1 and December 5, 1980, and to deliver trees of premium quality.

A party has "performed" under the terms of the contract if he has properly fulfilled his duty under the contract.

4. Acceptance of goods by a buyer does not occur until after the buyer has had a reasonable opportunity to inspect the goods and then signifies that the goods are conforming or that he will take and retain them in spite of their nonconformity; or fails to make an effective rejection. The rejection need not be in writing and can be by any reasonable means such as telegram, mailgram, telephone or letter.

\* \* \* \* \* \*

12. \* \* \*

1. The trees would conform to the contract when they are in accordance with the seller's obligations under the contract to timely deliver proper quantities and sizes of trees of a premium quality.

2. The buyer may reject any trees which are nonconforming if the nonconformity substantially impairs the value of the trees.

\* . \* \* \* \* \*

5. What is a reasonable time after delivery of the trees for the buyer to reject them depends upon the nature, purpose and circumstances.

\* \* \* \* \* \*

13. A party is excused from performing the contract if the other party breaches the contract in a substantial part and to a material degree.

■ It is defendant's position that his Requested Instructions 1 and 4 were necessary to properly inform the jury of his right to inspect the trees prior to his acceptance or rejection of them. We disagree, because paragraph 4 of the court's Instruction 3 brought to the jury's attention the defendant's right to inspect. Additionally, and contrary to defendant's argument, paragraphs 2, 3, and 5 of the court's Instruction 3 adequately covered the law presented in defendant's Subsections 1, 2 and 5, respectively, of Requested Instruction 12.

Defendant makes a similar argument that his Requested Instructions 3 and 13 (which were based on NMSA 1978, UJI Civ. 8.7 (Repl.Pamp.1980), and NMSA 1978, UJI Civ. 8.15 (Repl.Pamp.1980), respectively), should have been given, and that the trial court violated NMSA 1978, Civ.P.Rule 51(D) (Cum.Supp.1983), in failing to state its reasons for refusing the requested uniform instructions. We first note that UJI Civ. 8.0 instructs that Uniform Commercial Code cases should be covered by instructions found in Chapter 17 of the UJI, and UJI Civ. 17.0 suggests modification of Chapter 8 instructions, in addition to those in Chapter 17, if it is necessary to use additional instructions.

■ The obligations of the parties under the contract, addressed in defendant's Requested Instruction 3, were properly set forth in paragraph 2 of the trial court's Instruction 3, and the instruction conformed to the language of Section 2–301 of the Uniform Commercial Code (NMSA 1978, Section 55–2–301). Likewise, the defendant's rights in the event of plaintiff's breach, covered by defendant's Requested Instruction 13, were contained in paragraph 3 of the court's Instruction 3 and tracked the language of Section 2–601 of the Uniform Commercial Code (NMSA 1978, Section 55–2–601). It is not error to deny requested instructions when the instructions given adequately cover the law to be applied. *Hudson v. Otero,* 80 N.M. 668, 459 P.2d 830 (1969). Uniform Jury Instructions requested by the defendant were not necessary. The trial court, there-

fore, did not violate Rule 51(D) in not stating its reasons for refusing the requested instructions. Those that were given by the trial court satisfied Chapter 17 of the UJI and they correctly instructed on the law.

■ Defendant next asserts error in the trial court's refusal of two requested instructions intended to inform the jury regarding the required substance of defendant's notice to plaintiff of nonconforming tender. Paragraph 10 of Jury Instruction 3, however, made no mention of the defendant's obligation to notify plaintiff of nonconforming tender. Consequently, there was no need for the trial court to instruct the jury on the required substance of the notice. Nor was it necessary for the trial court to adopt defendant's Requested Instruction 11 on an implied warranty of fitness for a particular purpose. The quality or type of trees to be delivered under the contract was never at issue; plaintiff admitted during discovery that the contract required delivery of "premium quality" Christmas trees. Instructions which would have introduced a false issue into a case are properly refused. *Mantz v. Follingstad,* 84 N.M. 473, 505 P.2d 68 (1972).

**2. Jury Instruction 1**

■ In the portion of Jury Instruction 1 complained of by defendant, the jury was told:

Defendant as buyer in this case in his counterclaim claims:

1. The trees delivered to him by plaintiff were not of premium quality, and were not of the quantity and size ordered and he was damaged by the difference in value between the trees ordered and the trees delivered.

\*    \*    \*    \*    \*    \*

Plaintiff as seller in this case denies the defendant's claims in his counterclaim and asserts the following defenses:

1. Defendant accepted the goods delivered by Plaintiff after a reasonable opportunity to inspect the goods and never revoked his acceptance or notified Plaintiff of such;

2. Defendant failed to notify Plaintiff within a reasonable time after delivery of the goods of Defendant's rejection of the same;

3. Defendant exercised dominion over the goods delivered by Plaintiff and proceeded to sell the same for his own account.

Defendant's objection is that the instruction looked only to defendant's claim under NMSA 1978, Section 55–2–714, a section to which the three defenses covered by the instruction are not applicable. Defendant characterizes Instruction 1 as an instruction on a false issue and, citing *Archibeque v. Homrich,* 88 N.M. 527, 543 P.2d 820 (1975), urges reversible error. We agree that the trial court pinpointed defendant's counterclaim as one covered by the provisions of Section 55–2–714, and that the defenses stated in the instruction are not applicable to that section. We do not agree, however, that the trial court's failure to fully and clearly set out defendant's claims and plaintiff's defenses in Jury Instruction 1 constitutes reversible error. Jury Instruction 1 did not inject a false issue into the case *(see Archibeque),* nor was it misleading. When we read the instructions as a whole, we observe that paragraph 10 of the court's Jury Instruction 3 correctly informed the jury of defendant's rights upon acceptance or upon ineffective rejection or revocation of acceptance of the trees. *See McBee v. Atchison, Topeka, and Santa Fe Railway Co.,* 80 N.M. 468, 457 P.2d 987 (Ct.App.1969).

**3. Testimony based on personal knowledge**

Plaintiff's sole witness was James Merritt, plaintiff's sales manager stationed at its headquarters in the State of Washington. Defendant argues that, because Merritt's only connection with this case was in a telephone conversation between

defendant and Merritt in October, 1980, Merritt lacked the personal knowledge required in NMSA 1978, Evid. Rule 602 (Repl. Pamp.1983), to testify regarding the events and subsequent circumstances of the transaction between the parties.

The admission of evidence is within the discretion of the trial court. *Matter of Ferrill*, 97 N.M. 383, 640 P.2d 489 (Ct. App.1981). We have examined the portions of the transcript cited to us by defendant. We are satisfied that the trial court carefully restricted Merritt's testimony to matters relating to the conduct of plaintiff's business about which Merritt had personal knowledge. The trial court did not abuse its discretion in admitting Merritt's testimony.

### 4. Exhibits

Defendant contends that Exhibits 8, 18, 22, 23, 24 and 28 should not have been admitted into evidence. His principal argument is that a proper foundation was not laid, as required by NMSA 1978, Evid.Rule 803(6) (Repl.Pamp.1983), the business records exception to the hearsay rule. Rule 803(6) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(6) **Records of regularly conducted activity.**

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of

information or the method or circumstances of preparation indicate lack of trustworthiness.

The exhibits came from plaintiff's credit files. Defendant urges that Merritt, as sales manager, did not have knowledge of the accuracy of the dates or signatures on the exhibits and, consequently, he was not a "qualified witness." Further, he contends that Exhibits 23, 24 and 28, which were notations made by plaintiff when it learned of defendant's dissatisfaction with the tree shipments, and reflected defendant's unwillingness to pay, were not trustworthy because they were prepared in anticipation of litigation.

The Court of Appeals, in *State v. Ruiz*, 94 N.M. 771, 775, 617 P.2d 160, 164 (Ct. App.1980), quoting 4 Weinstein's Evidence ¶ 803(6)[02] (1979) at 803–152, stated:

"The phrase 'other qualified witness' should be given the broadest interpretation; he need not be an employee of the entity so long as he understands the system." Our view is that a witness is "qualified" if [he is] able to testify to the foundation requirements stated in Evidence Rule 803(6), supra.

Applying the above quotation, we cannot say that Merritt's inability to verify the dates or identity of the person who made the handwritten notations on the exhibits is fatal. Merritt testified that plaintiff kept the exhibits as a regular business practice and that the notations on the exhibits were made regularly in the course of conducting plaintiff's business. Merritt was a "qualified witness" whose testimony was admissible under Evidence Rule 803(6).

With regard to the necessity for a determination of "trustworthiness" of the documents, that is left to the discretion of the trial court. *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976). Citing *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), defendant insists that Exhibits 23, 24 and 28 containing information written down following tele-

phone conversations with defendant, not only were not kept in the ordinary course of business, but that they were not trustworthy because they had been written down by plaintiff's credit manager and kept in anticipation of litigation.

Plaintiff's credit manager, Tom Thomas, did not appear at trial. The handwritten notation in Exhibit 23 reads:

> 12/23 Ashcraft called—took a bath. Said he'd call next week about settling. Wanted us to know he was aware of bill. . . .

Exhibit 24 is a typewritten memo to the file from Tom Thomas, dated January 27, 1981. It reads:

> I finally got in touch with Mr. Ashcraft concerning payment on his account. At this point he is still in shock over the season. He indicated that he is trying to work out some kind of arrangements with his attorney. \* \* \* His gross sales were around $3,000.00 before overhead expenses such as rent, signs, etc. At the present time he feels he has a moral obligation to do something, but he also has the instincts to survive. He said that he would discuss this with this attorney and get back to me within a week.

■■■ The trial court did not abuse its discretion in finding that the type of information in Exhibits 23, 24, and 28 is regularly recorded in the course of plaintiff's business. Exhibit 28 appears to be a page from plaintiff's credit manager's calendar book or log, which defendant relied on to establish that he complained to plaintiff on December 5th. The trustworthiness of an exhibit cannot be attacked by one who uses it for his benefit during the course of trial. However, on the issue of the trustworthiness of the contents of Exhibits 23 and 24, 4 Weinstein's Evidence ¶ 803(6)[07] (1981) at 803–178, states:

> The significance of the evidence contained in the record, the availability of other evidence on the point, the degree to which the declarant's bias would be self-evident to the jury and the circumstances in which the record was made, are all factors the court should consider in order

to determine whether the need for the evidence outweighs the dangers stemming from its admission.

The characterizations in Exhibits 23 and 24 by plaintiff's credit manager of his conversations with defendant are damaging to the defendant. Although the credit manager's bias could be readily argued to the jury, the significance of the notations is such that the defendant should have had the opportunity to confront and cross-examine the credit manager regarding the potential for misrepresenting defendant's statements. The weight of those factors was too great to allow admission of Exhibits 23 and 24 in this case. *See Palmer v. Hoffman;* 4 Weinstein's Evidence ¶ 803(6)[07] (1981) at 803–173, 174.

■■■ Concerning admissibility of the first page of Exhibit 18, a statement from a trucking company, it was not hearsay because it was not offered to prove the truth of the matter asserted. Defendant's objection to that exhibit is without merit.

Exhibit 22 contained a detailed comparison of claims paid by plaintiff in 1979 and 1980. Relying on *Ohlson v. Kent Nowlin Construction Co.,* 99 N.M. 539, 660 P.2d 1021 (Ct.App.1983), defendant argues that the low percentage of poor quality trees shown by Exhibit 22 was, first, irrelevant to show the quality of the trees delivered to defendant; and second, that the originals were not made available to defendant pursuant to NMSA 1978, Evid. Rule 1006 (Repl.Pamp.1983), the rule relating to production of summaries of voluminous writings or records to be submitted in evidence.

■■■ *Ohlson* is not controlling. That case dealt with an attempt to prove defendant's negligence by introducing evidence of 166 prior incidents of a nature somewhat similar to the conduct complained of. In this case plaintiff offered two years of statistical evidence related to the quality of its trees.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

NMSA 1978, Evid. R. 401 (Repl.Pamp. 1983). Exhibit 22 was relevant because it presented a depiction of plaintiff's regular "habit" or course of conduct over a 2-year period, bore directly on the probabilities that defendant received a large percentage of poor quality trees. It was not unfairly prejudicial or confusing and its significance, or lack thereof, was readily arguable to the jury by defendant.

It appears also that the trial court rejected a contention that Exhibit 22 was a summary and subject to Evidence Rule 1006. The evidence supports the ruling. There was no abuse of discretion in the admission of Exhibit 22 into evidence.

The jury verdict is vacated and the case is remanded for a new trial consistent with our opinion on the issues raised in this appeal.

IT IS SO ORDERED.

FEDERICI, C.J., and SOSA, Senior Justice, concur.