830 P.2d 179

STATE of New Mexico,
Plaintiff–Appellee,

v.

Pete PINELA, Defendant–Appellant.

No. 12765.

Court of Appeals of New Mexico.

March 5, 1992.

Certiorari Denied April 15, 1992.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Hilary Lamberton, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Defendant appeals his conviction for possession of cocaine. He argues that the Roswell Municipal Court bench warrant was invalid, and if it was not, Officer Steinbeck was not authorized to execute it in Dexter. The trial court made the following rulings: (1) the warrant was valid, even though not based on a sworn affidavit; and (2) the arrest was legal because a Chaves County sheriff's deputy has the authority to arrest a person in Chaves County based on a Roswell Municipal Court bench warrant. We affirm.

### FACTS

Marvin Steinbeck, a police officer in Dexter, stopped Defendant in that city because he was not wearing a seat belt. After Defendant gave Officer Steinbeck his driver's license, Steinbeck ran a license check and a local warrant check on Defendant. The routine check revealed there was an outstanding bench warrant from Roswell on Defendant. Officer Steinbeck took Defendant into custody and did a pat-down search. During the pat-down search, Officer Steinbeck found a small metal tin in Defendant's right trouser pocket. Officer Steinbeck opened the tin and found a small brown vial and three wrapping papers that tested positive for cocaine.

Prior to trial, Defendant filed a motion to suppress on the ground that the Roswell bench warrant was invalid, but that even if it had been valid, Officer Steinbeck lacked authority to execute the warrant.

Lorraine Lucero, a senior clerk at the Roswell Municipal Court, testified at the suppression hearing concerning that court's warrant procedures. She stated that when the clerk's office first receives notice a party has been cited, a card is completed and a computer file is opened. The computer file contains the necessary information about the individual and the fine imposed. If an individual does not pay the fine on or before the date listed on the original citation or any authorized extension, the court's computer automatically prints an order to show cause. Ms. Lucero further testified that in processing the show cause orders, a court clerk mails the original order to the defendant, and places a copy of the order in the court's file. The show cause order contains a deadline by which the defendant must pay the fine or request an extension. If an individual fails to pay or appear by the requisite date, a bench warrant is automatically printed by the court's computer. When the bench warrant is issued, the clerk's office checks each party's file and makes sure that a show cause order was printed and mailed before the bench warrant is sent to the judge for signature. Although the clerks do not swear out an affidavit, they do write the amount of the bond or fine for the judge on an affidavit form. Ms. Lucero testified that this "affidavit" is also filled out by the clerks to indicate when the show cause order expired, and other general information for the judge's use.

At the suppression hearing, Officer Steinbeck testified that although he was a Dexter police officer at the time of Defendant's arrest, he was also commissioned as a sheriff's deputy in Chaves County, where both the city of Roswell and Dexter are located.

### VALIDITY OF THE BENCH WARRANT

■ SCRA 1986, 8–206 (Repl.Pamp.1990) (Rule 8–206), governs the issuance of bench warrants by municipal judges. Rule 8–206(A) provides that unless the transgression on which the bench warrant is based is

within the court's "personal knowledge," the warrant may not be issued "except upon a sworn written statement of probable cause." Defendant argues that because the judge had no "personal knowledge" of nonpayment, Rule 8–206 required the municipal court to have a sworn statement of probable cause in order to issue the bench warrant. Defendant cites no authority for this proposition but merely asserts that the "rule needs no interpreting and can be readily applied to the facts of appellant's case."

Defendant misapprehends the nature of the "personal knowledge" required to issue a bench warrant under Rule 8–206. As indicated, the Roswell municipal judge in the case at bar received a computer-generated bench warrant. Before the clerk presented that warrant to the judge, however, the clerk's office had verified that a show cause order had previously been mailed to Defendant and that the response time stated in that show cause order had expired. The clerk's office also noted the amount of the fine and other general information on an unsworn affidavit form before presenting it to the judge.

The "personal knowledge" exception to the affidavit requirement appears to recognize that there is no point in the municipal judge's executing an affidavit when the judge has personal knowledge of facts constituting probable cause. Other jurisdictions have approved the elimination of similar useless formalities in this context. *See, e.g., O'Dell v. City of Knoxville,* 388 S.W.2d 150 (Tenn.Ct.App.1964) (facsimile signature of municipal judge on warrant presumed to be adopted by judge); *Salt Lake City v. Hanson,* 19 Utah 2d 32, 425 P.2d 773 (1967) (stamped signatures of police officer and city judge on complaint charging ordinance violations sufficient).

In this regard, we think the requirement of "personal knowledge" under Rule 8–206 is analogous to the requirement that a witness can only testify as to matters on which he has "personal knowledge" under SCRA 1986, 11–602 (Rule 602). The federal courts have repeatedly recognized, under the virtually identical federal rule of evidence, that a witness can acquire "personal knowledge" through a review of records kept in the regular course of business. *United States v. Endicott,* 803 F.2d 506, 512 (9th Cir.1986), *cert. denied,* —— U.S. ——, 111 S.Ct. 529, 112 L.Ed.2d 540 (1990); *Teen–Ed, Inc. v. Kimball Int'l, Inc.,* 620 F.2d 399, 403 (3d Cir.1980); *Cities Serv. Oil Co. v. Coleman Oil Co.,* 470 F.2d 925, 932 (1st Cir.1972), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973); *cf. Nichols Corp. v. Bill Stuckman Constr., Inc.,* 105 N.M. 37, 41, 728 P.2d 447, 451 (1986) (principal in construction project allowed to testify on value of materials and labor based on his review of business records). The federal courts have also recognized that a person supervising the employees who actually compiled the data may thus acquire sufficient "personal knowledge." *United States v. Sutton,* 795 F.2d 1040, 1057 (Temp.Emer.Ct.App.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987).

The number and type of records kept, and the virtually universal use of computers to record vast quantities of information in our society, make it unrealistic to require a witness to have personally observed each aspect of a transaction if he is familiar with the method the organization routinely uses to compile and record such data. The fifth circuit recognized as much in *United States v. Quezada,* 754 F.2d 1190 (5th Cir. 1985), holding there was sufficient "personal knowledge" to support testimony in an analogous factual setting. The defendant therein appealed his conviction for illegal re-entry after deportation, arguing that the border patrol agent who testified at trial lacked personal knowledge that the defendant had previously been deported. The agent testified on his knowledge of standard deportation procedure and then relied upon the prior deportation warrant and a letter to the defendant warning him of the penalties for re-entry. *Id.* at 1195–96. Although the agent did not testify that he actually participated in the defendant's prior deportation, the district court found sufficient "personal knowledge" under Federal Rule of Evidence 602. *Id.* The fifth circuit affirmed and likened it to testimony

concerning mailing a letter in the normal course of business. *Id.* at 1196 n. 14.

## AUTHORITY TO EXECUTE ON WARRANT BEYOND CITY LIMITS

■ Defendant next argues Officer Steinbeck did not have the authority to arrest Defendant in Dexter on the basis of a Roswell Municipal Court bench warrant. In support of this position, Defendant relies upon NMSA 1978, Section 35–14–2(C) (Repl.Supp.1988), which extends the personal jurisdiction of municipal courts "to any defendant who has been properly served with criminal process of the court anywhere in the state if that criminal process arises out of a charge of violation of a municipal ordinance prohibiting driving while under the influence of intoxicating liquor or drugs." Section 35–14–2(A), which grants municipal courts the authority to issue warrants, contains no such reference to the jurisdictional extent of proper service. Defendant reasons that by specifically allowing statewide service of warrants based on driving while intoxicated (DWI), by negative inference the legislature recognized that the personal jurisdiction of municipal courts on charges other than DWI is more limited.[1]

Defendant overlooks NMSA 1978, Section 3–13–2(A) (Cum.Supp.1990), which provides in relevant part:

A. The police officer of a municipality shall:

(1) execute and return all writs and process as directed by the municipal judge of the municipality employing the police officer;

(2) execute and return all criminal process as directed by the municipal judge of any incorporated municipality in the state if the criminal process arises out of a charge of violation of a municipal ordinance prohibiting driving while under the influence of intoxicating liquor or drugs;

(3) serve criminal writs and process specified in Paragraphs (1) and (2) of this subsection in any part of the county wherein the municipality is situated....

■ Because a bench warrant is legal "process," *State v. Gutierrez,* 102 N.M. 726, 729, 699 P.2d 1078, 1081 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985), municipal police officers clearly have county-wide jurisdiction to execute on warrants authorized by their municipality. *See* AG Op. No. 61–3 (1961–62) (under prior version of statute village marshall has power to execute a municipal court arrest warrant anywhere in the county). Thus, a Roswell city police officer would have been authorized by Section 3–13–2(A)(3) to execute the bench warrant anywhere in Chaves County, including Dexter. Furthermore, NMSA 1978, Section 35–15–4 (Repl.Supp.1988), provides that a county sheriff can "serve any process ... authorized to be made by any city or town officer." Deputy Steinbeck, as a Chaves County deputy sheriff, was therefore authorized to serve the Roswell warrant in Dexter.

In this day of transitory populations and cross-deputization,[2] common sense dictates that courts not look for hypertechnical statutory interpretations to limit cooperation among police officers in adjoining jurisdictions. We will not strain to find such an interpretation when the language employed by the legislature in Section 35–15–4 seems clearly intended to allow county sheriffs to serve valid municipal court warrants throughout the county.

## CONCLUSION

We agree with the district court that the Roswell municipal judge had sufficient "personal knowledge" to support the bench warrant from his review of the information on the unsworn affidavit from the clerk's office. We also hold that Officer Steinbeck, as an authorized Chaves County deputy sheriff, had the authority to execute on the Roswell Municipal Court warrant any-

---

1. NMSA 1978, Section 31–1–4(E) (Repl.Pamp.1984), would also seem to suggest that a municipal court warrant cannot be served throughout the state.

2. NMSA 1978, Section 29–8–3 (Repl.Pamp.1990), for example, even allows the state Environmental Improvement Division to seek assistance from city and county enforcement agencies to enforce asbestos disposal regulations. AG Op. No. 87–48 (1987).

where within the county. Accordingly, the district court was correct in denying the motion to suppress and is affirmed.

IT IS SO ORDERED.

HARTZ and FLORES, JJ., concur.