2007-NMCA-074

162 P.3d 896

**Gary ROARK and First New Mexico Bank, a New Mexico Banking Corporation, Plaintiffs–Appellants,**

v.

**FARMERS GROUP, INC., Farmers Insurance Exchange, Farmers Insurance Company of Arizona, Richard Chaires, Jeffrey Fitzgerald, and Lee Tibbs, Defendants–Appellees.**

and

**First New Mexico Bank, a New Mexico Banking Corporation, Plaintiff–Appellant,**

v.

**Farmers Group, Inc., Farmers Insurance Exchange, Farmers Insurance Company of Arizona, Richard Chaires, Jeffrey Fitzgerald, and Lee Tibbs, Defendants–Appellees.**

Nos. 26,400, 24,287.

Court of Appeals of New Mexico.

April 5, 2007.

Certiorari Denied, No. 30,423, June 12, 2007.

---

Frederick H. Sherman, Sherman & Sherman, Deming, NM, for Appellant First New Mexico Bank.

Steven C. Henry, Corrales, NM, for Appellant Gary Roark.

William R. Anderson, Sandenaw, Piazza & Anderson, P.C., Las Cruces, NM, for Appellees.

## OPINION

FRY, Judge.

{1} This case is the consolidation of two appeals from two separate actions involving the same parties and the same dispute. At its most simple, the dispute is about insurance coverage. The first action was brought by First New Mexico Bank (Bank) against Gary Roark and Roark's insurer, Farmers Insurance Company of Arizona and related parties (collectively, Farmers). After a default judgment against Roark, a jury resolved that case in favor of Farmers. Bank appealed the first action, arguing that the trial court erred in certain evidentiary rulings and in denying Bank's motion to amend the complaint. While that appeal was pending, Bank and Roark filed another lawsuit against Farmers in a different county alleging the same claims that Bank had sought to add in the proposed amended complaint that was denied, and being appealed, in the first action. The trial court in the second action consolidated Bank's claims against Farmers with the first action. Bank then appealed the order of consolidation in the second action.

{2} We affirm the evidentiary rulings and the denial of Bank's motion to amend the complaint in the first action. We reverse the order of consolidation by the trial court in the second action and remand that part of the case for proceedings consistent with this opinion.

## BACKGROUND

{3} In 1999, Roark obtained financing from Bank to purchase a pickup truck. Roark pledged the truck as collateral for the loan. As a condition of the loan, Roark agreed to obtain comprehensive insurance covering the truck. Roark obtained the in-

surance through Farmers, which in turn provided Bank with a lienholder's certificate of insurance that stated, "EFFECTIVE DATE: 09–22–1999" and "EXPIRATION DATE: CONTINUOUS UNTIL CANCELLED." At some point, Farmers cancelled Roark's insurance policy on the truck for non-payment of the premiums. Roark reinstated the policy, but for general liability coverage as opposed to comprehensive coverage. The truck was subsequently stolen, and Farmers denied Bank's claims for coverage based on its position that no policy was in force on the date of loss.

{4} In 2001, Bank first filed suit against Farmers and Roark in Hidalgo County District Court seeking money damages (the first lawsuit). Bank obtained a default judgment against Roark. Bank alleged that Farmers failed to provide Bank with notice of cancellation, and thus that Farmers was still liable for the loss as the insurer of the truck. Farmers denied that it had failed to provide proper notice of cancellation to Bank. Following the default judgment against Roark, the only issue remaining in the case was whether Farmers properly provided notice of cancellation to Bank. Approximately two months prior to trial, Bank filed a motion to amend its original complaint, and the proposed amended complaint included new causes of action. The trial court reserved ruling on the motion to amend the complaint pending the outcome of a jury trial on the issue in the original complaint. At trial, the jury returned a verdict for Farmers, finding that Farmers did not "fail to mail a notice of cancellation to [Bank] in compliance with the terms of the insurance policy or state law." The trial court denied Bank's motion to amend the complaint.

{5} Bank appealed from the judgment in the first lawsuit on the grounds that the trial court should have allowed Bank to amend its complaint to include additional claims, and that the trial court erred in excluding and admitting various testimony and evidence. The merits of that appeal are the subject of the first of the two appeals that we have consolidated in this opinion.

{6} While the first lawsuit was pending before this Court on appeal, Bank joined with Roark and filed a new action in Grant County (the second lawsuit) against Farmers. The second lawsuit was premised on the same transaction that gave rise to the first lawsuit. The complaint in the second lawsuit was based on the same causes of action raised in the proposed amended complaint that was denied in the first lawsuit. Bank claims that it filed the second lawsuit in contemplation of the statute of limitations expiring and because of newly discovered evidence. Farmers disputed the existence of such evidence.

{7} Farmers asserted the affirmative defenses of res judicata and collateral estoppel in its answer to the second lawsuit. However, instead of filing a motion to dismiss based on principles of preclusion, Farmers filed a motion to consolidate the second lawsuit with the first under Rule 1–042 NMRA. The trial court in the second lawsuit granted the motion to consolidate Bank's claims against Farmers with the first lawsuit that was already on appeal. In the order consolidating the second lawsuit with the first lawsuit the court cited "common factual issues."

{8} Bank opposed consolidation. After unsuccessful attempts to get the court in the second lawsuit to reconsider its order, Bank appealed the issue. Bank also petitioned this Court for a writ of error, but Bank admits in its briefs that it did so in an untimely fashion, and this Court denied the petition. The merits of the appeal from the order of consolidation are the subject of the second of the two consolidated appeals we address in this opinion.

{9} We provide additional facts as necessary throughout the opinion.

## DISCUSSION

{10} We first address Bank's claims on appeal arising from the trial in the first action. Bank argues that the trial court erred by: (1) denying its motion to amend the complaint; (2) admitting Farmers' Exhibit 1 and testimony of Farmers' witness, Jeff Fitzgerald; and (3) striking the testimony of Bank's expert witness, Ted Knight. We affirm the trial court in the first case on all of these grounds raised in Bank's appeal.

{11} We then address Bank's appeal of the consolidation order by first examining whether the order of consolidation is final for appeal. We conclude that it is, and we therefore address the merits of the consolidation order issue. We reverse the trial court in the second case and hold that the order of consolidation was improper under the circumstances.

## I. The Trial Court Did Not Abuse its Discretion When It Denied Bank's Motion to Amend the Complaint

{12} Twenty months after the filing of the original complaint and after the close of discovery, Bank filed a motion to amend the complaint to include claims of estoppel, insurance bad faith, violations of the statutory schemes contained in NMSA 1978, §§ 59A-16-4 (1984), -20 (1997), commonly referred to as the Insurance Code, and NMSA 1978, §§ 57-12-2 (2003), -10 (2005), commonly referred to as the Unfair Practices Act. Farmers opposed Bank's motion to file the amended complaint as untimely and claimed that allowing Bank to amend the complaint would substantially prejudice Farmers' interests. In response, Bank suggested that the trial court could eliminate prejudice to Farmers "by bifurcating the issues and by trying the issues in the original [c]omplaint first." Rather than rule on the motion to amend immediately, the trial court postponed its ruling and thereby effectively bifurcated the issue of the notice of cancellation from the other issues raised by Bank in the proposed amended complaint. After the jury determined that Farmers mailed the notice of cancellation to Bank in compliance with the law, the trial court denied Bank's motion to file an amended complaint, stating that it "was not timely filed," and that it was "legally and factually inappropriate."

{13} Bank argues that the trial court erred in denying its proposed amended complaint, which included claims for violations of the Unfair Practices Act and the Insurance Code, a claim for insurance bad faith, and a claim that Farmers should be estopped to deny coverage.

■ {14} The rule governing the amendment of pleadings, Rule 1-015(A) NMRA, provides that after a responsive pleading is served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Normally, orders denying amendments are reviewed for abuse of discretion. *Slide-A-Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* 105 N.M. 433, 436, 733 P.2d 1316, 1319 (1987) ("[A]mendments to pleadings are favored, and should be allowed when justice so requires.... [However], denial of a motion to amend will be reversed only upon a showing of clear abuse of discretion." (citation omitted)).

■ {15} Bank contends that the standard of review is de novo because of the unusual procedural posture surrounding the motion to amend. The trial court reserved ruling on the motion to amend the complaint pending the outcome of the jury trial on the question of whether Farmers mailed notice of cancellation and, in doing so, the court effectively bifurcated the issues in the proposed amended complaint from the single issue in the original complaint. Thus, Bank argues that the trial court's denial of the motion to amend the complaint was equivalent to a directed verdict on the allegations contained in the proposed amended complaint, or, alternatively, Bank appears to argue that the denial of the motion to amend the complaint is the equivalent of a Rule 1-012(B)(6) NMRA dismissal for failure to state a claim. Based on either argument, Bank therefore contends that the denial of the motion should be reviewed de novo. Bank does not outright challenge the trial court's decision to postpone ruling on the motion to amend. It appears that Bank is challenging the *result* of the postponement—that is, the fact that the issues in Bank's amended complaint were not heard and resolved by the jury.

{16} We are not persuaded that a de novo standard applies. For the trial court's actions to be considered a dismissal or directed verdict it would have been necessary for the trial court to grant the motion to amend and then dismiss the claims. This is not what occurred here.

■ {17} We therefore review the denial of Bank's motion to amend for abuse of discretion. Following the trial and the jury's verdict in favor of Farmers on the issue raised by Bank's original complaint, the trial court denied Bank's motion to amend on two grounds: (1) the motion was untimely, and (2) the proposed amended complaint was "legally and factually inappropriate." We may affirm the trial court if either reason for denial was proper. To the extent that the trial court denied the motion to amend the complaint because Bank failed to timely file, we cannot say that the trial court abused its discretion. Bank filed its motion and proposed amended complaint twenty months after filing the original complaint, seven months after the scheduling order was entered, three months after the deadline for such motions established by the scheduling order, and one month after discovery had been completed. Bank filed the motion just over two months before the scheduled trial. Bank's proposed amended complaint included new theories and causes of action.

{18} Farmers indicated that it would be prejudiced by late amendments of the pleadings. *See Crumpacker v. DeNaples,* 1998–NMCA–169, ¶ 17, 126 N.M. 288, 968 P.2d 799 ("[I]f a party does not consent to amendment, the trial court is required to allow it freely if the objecting party fails to show he or she will be prejudiced."). Farmers argued that having completed discovery and deposed Bank's expert, it would be prejudiced by Bank's amending the complaint to include multiple theories on which Farmers did not have the opportunity to conduct discovery. Bank argues that Farmers had the opportunity to depose Bank's witness on the theories Bank alleged in the proposed amended complaint. However, nothing in the record indicates that Farmers deposed Bank's witness on the issues in the amended complaint. Moreover, Bank concedes in its brief in chief that the deposition took place *before* the motion to amend was filed.

{19} Based on the timing of Bank's motion to amend the complaint, the complexity of the new claims alleged in the proposed amended complaint, and the prejudice Farmers demonstrated, we hold that the trial court did not abuse its discretion in denying the motion to amend. Because of our holding, we need not address Bank's arguments on the merits of the claims included in the proposed amended complaint.

## II. Evidentiary Issues

### A. The Trial Court Did Not Abuse Its Discretion in Admitting Farmers' Exhibit 1

■ {20} Bank challenges the trial court's decision to admit Farmers' Exhibit 1, a computer generated record of Farmers' mailing of cancellation notices. Bank appears to make two arguments: (1) that there was insufficient foundation for the admission of the exhibit, and (2) that the exhibit lacked trustworthiness. "The admissibility of evidence is discretionary with the trial court, and its ruling will only be reversed upon a showing of abuse of that discretion." *State v. Wynne,* 108 N.M. 134, 139, 767 P.2d 373, 378 (Ct.App.1988). The same standard of review applies to the determination of a document's trustworthiness. *Id.*

{21} The trial court admitted Exhibit 1 pursuant to Rule 11–803(F) NMRA, which is the business records exception to the hearsay rule. That exception permits the admission of:

[a] memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

*Id.*

■ {22} Bank first argues that Farmers' representative, Jeff Fitzgerald, was not qualified to provide the foundation for Exhibit 1. Bank claims that Fitzgerald lacked personal knowledge about Farmers' policies and procedures in generating notices of cancellation

because he lived and worked in Arizona, and the notices were generated and mailed from California, and because he failed to testify that *a person* was involved in generating the document in this case.

{23} Fitzgerald testified that he was Farmers' public affairs coordinator responsible for regulatory compliance issues for Arizona, Nevada, and New Mexico. Fitzgerald testified that he went to Farmers' California office to familiarize himself with Farmers' processing and mailing of notices of cancellation. He testified that he had personal knowledge about the method by which Farmers mails notices of cancellation. Fitzgerald testified in great detail about the computer system used to generate the notices of cancellation. He testified that he used the computer system that generated the notice of cancellation at issue in this case and that he was also familiar with a second computer system that Farmers used at the time the notice of cancellation was allegedly generated. Fitzgerald explained in detail the process for mailing notices of cancellation, articulating a multi-step process starting with the computer generating an order for printing the notices and culminating in eventual delivery at the post office for mailing.

{24} To admit a business record under Rule 11–803(F), the testifying witness need not be the person who supervised the creation of the record or actually created the record. *See State v. Ruiz*, 94 N.M. 771, 775, 617 P.2d 160, 164 (Ct.App.1980) ("The phrase 'other qualified witness' should be given the broadest interpretation; he need not be an employee of the entity *so long as he understands the system*." (emphasis added) (internal quotation marks and citation omitted), *superseded by statute on other grounds*, NMSA 1978, § 30–14–1 (1995), *as stated in State v. McCormack*, 101 N.M. 349, 351, 682 P.2d 742, 744 (Ct.App.1984)).

{25} Our Supreme Court provided guidance on what constitutes a qualified foundation witness in the context of the business record exception in *Kirk Co. v. Ashcraft*, 101 N.M. 462, 684 P.2d 1127 (1984). Kirk Company was suing Ashcraft to recover the purchase price under a contract for the sale of Christmas trees and Ashcraft counter-

claimed for breach of contract. *Id.* at 464, 684 P.2d at 1129. Kirk Company sought to introduce its credit files under the business record exception. *Id.* at 468, 684 P.2d at 1133. Ashcraft objected, in part because Kirk Company utilized its sales manager as the "qualified witness" to lay a foundation for the trustworthiness of the records. *Id.* Our Supreme Court held that the trial court did not abuse its discretion when it determined the sales manager was a "qualified witness" because the sales manager testified that Kirk Company "kept the exhibits as a regular business practice and that the notations on the exhibits were made regularly in the course of conducting ... business," even though the sales manager lacked "[personal] knowledge of the accuracy of the dates or signatures on the exhibits." *Id.*

{26} Like the sales manager in *Kirk Co.*, Fitzgerald was not the person who created the record, but he testified that he had personal knowledge about the workings of the computer system used by Farmers. It makes no difference that Fitzgerald did not ordinarily work in California because he familiarized himself with the process routinely performed in the California office and because he testified from personal knowledge that the record was the result of Farmers' regularly conducted business activity. Applying *Kirk Co.* to the case at bar, and giving the language of the rule "other qualified witness" "the broadest interpretation," we cannot say that the trial court in this case abused its discretion in permitting Fitzgerald to testify regarding Farmer's procedures in maintaining records of the generation and mailing of notices of cancellation.

{27} Bank next claims that Fitzgerald never testified that a person participated in the preparation of the document in question. The issue is whether a record generated by a computer may be admissible when the language of Rule 11–803(F) contemplates that the business record would be "made ... by[ ] a person with knowledge." Although this narrow question is one of first impression in New Mexico, its answer is a natural extension of the rule we articulated above.

{28} In *State v. Pinela*, 113 N.M. 627, 629, 830 P.2d 179, 181 (Ct.App.1992), this Court commented on the widespread use of and dependency on computers in maintaining business records.

> The number and type of records kept, and the virtually universal use of computers to record vast quantities of information in our society, make it unrealistic to require a witness to have personally observed each aspect of a transaction if he is familiar with the method the organization routinely uses to compile and record such data.

In *Pinela*, the defendant challenged the validity of a bench warrant that was issued for his arrest. *Id.* A senior clerk for the court that issued the warrant testified regarding the process by which the court's computer system generates bench warrants. *Id.* at 628, 830 P.2d at 180. This process involved the computer system automatically generating an order to show cause, and if the order was not resolved, a bench warrant was "automatically printed by the court's computer." *Id.* We recognize that *Pinela* is different from this case because the defendant in that case was challenging the validity of the warrant due to the issuing judge's lack of the "personal knowledge" required by Rule 8–206 NMRA (the rule governing warrants) of the alleged facts giving rise to the warrant. Despite the fact that *Pinela* was interpreting a different rule, the analysis is broad enough to apply in this case. The defendant in *Pinela* was essentially challenging the validity of the warrant because it was generated by a computer, not by a judge's personal knowledge of the alleged wrongs upon which the warrant was based. In *Pinela*, this Court held that, based on the computer-generated documents, the warrant-issuing judge had sufficient personal knowledge to satisfy the rule. 113 N.M. at 629–30, 830 P.2d at 181–82.

{29} In this case, Bank challenges the admission of Exhibit 1 because it was not created by a person. Like the rule in question in *Pinela*, Rule 11–803(F) contemplates that the business record must be made by "a person with knowledge." In light of this Court's recognition in *Pinela* of the modern dependence on computerized data, and computerized generation and maintenance of records, we cannot read Rule 11–803(F) so literally as to require *a person* to hand-write or initiate the record. We also note that although computers may generate records, they only do so under the control of a person or people. We therefore hold that a computer-generated record may be admissible under Rule 11–803(F). The admission of a computer-generated record depends on the same criteria as a record generated by a person and recorded by hand. In this case, as discussed above, the trial court did not abuse its discretion in evaluating those criteria and admitting Exhibit 1.

{30} Bank next argues that the trial court erred in admitting Exhibit 1 because the exhibit was not trustworthy. Bank bases this argument on the fact that Exhibit 1 does not bear the mark of a stamp from the post office. Fitzgerald testified that the computer-generated list of notices of cancellation to be mailed is customarily stamped by the post office and scanned into one of Farmers' computer database systems. Again, the determination of the trustworthiness of an exhibit is reviewed for abuse of the trial court's discretion. *Wynne*, 108 N.M. at 139, 767 P.2d at 378.

{31} At trial, Fitzgerald testified that a list of the notices of cancellation to be mailed, matching the actual notices, goes to the United States Post Office. He explained that a postal worker stamps the list as "received" and then the stamped list is brought back to Farmers and scanned into its computer system. Fitzgerald further testified that the stamped mailing list is disposed of after one year and the copy that was scanned into the computer is retained. It was this copy that was admitted at trial. Fitzgerald testified that the scanned copy does not bear the stamp of the post office because New Mexico law does not require a scanned copy of the report to prove mailing of the notice.

{32} The burden of establishing lack of trustworthiness is on the party opposing admission. *Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1010 (8th Cir. 2002). In light of Fitzgerald's testimony, it was not unreasonable for the trial court to conclude that Bank did not meet its burden.

We cannot say that the trial court abused its discretion in admitting the document.

## B. The Trial Court Did Not Abuse Its Discretion In Admitting the Testimony of Jeff Fitzgerald

{33} Bank argues that the trial court should have excluded Fitzgerald's testimony because it was not timely disclosed. Bank bases this argument on the fact that Fitzgerald testified at trial in great detail about Farmer's procedures for mailing notices of cancellation, which was in contrast to his deposition testimony that he was not familiar with the system. Bank does not contend that it did not know Fitzgerald would be testifying at trial. Rather, Bank claims the trial court should have excluded Fitzgerald's more detailed testimony at trial regarding the routine business practices in Farmers' California office because Fitzgerald was unfamiliar with those practices when he was deposed. The trial court reasoned that Farmers had simply arranged for Fitzgerald to acquire more foundational information between the time of his deposition and the trial.

{34} If a deposed witness's trial testimony differs from his deposition testimony, the remedy lies in Rule 11–613 NMRA, whereby a party may impeach a witness's credibility by using the witness's prior inconsistent statement. *See State v. Carlton,* 82 N.M. 537, 542, 484 P.2d 757, 762 (Ct.App. 1971) ("It is fundamental that a statement, written or oral of a witness as to a material matter inconsistent with his testimony at trial is admissible for impeachment purposes."). Given this remedy we cannot say that the trial court abused its discretion by overruling Bank's objection.

{35} The cases on which Bank relies are inapposite. Bank relies on *Khalsa v. Khalsa,* 107 N.M. 31, 751 P.2d 715 (Ct.App.1988). In *Khalsa* this Court held that the trial court abused its discretion in allowing testimony of two experts when the party for whom the experts were testifying did not disclose the experts until the day before trial and the opposing party had no opportunity to depose the experts and was unable to effectively cross-examine them. *Id.* at 35, 751 P.2d at 719. Also misplaced is Bank's reliance on

*Shamalon Bird Farm, Ltd. v. U.S. Fidelity & Guaranty Co.,* 111 N.M. 713, 809 P.2d 627 (1991). In *Shamalon Bird Farm, Ltd.,* our Supreme Court held that the trial court did not abuse its discretion in excluding expert testimony when the expert was available three weeks before trial and expert's opinions were only "preliminary." *Id.* at 714, 809 P.2d at 628. Neither of these cases relates to the circumstances in the present case.

## C. The Trial Court Did Not Abuse Its Discretion in Excluding Specific Subjects of Witness Ted Knight's Testimony

{36} Bank offered Ted Knight as a witness to testify regarding the "industry standards requiring actual notice . . . and not just mailing," "the many mistakes [Farmers] made in its documentation relating to [the mailing of notices of cancellation]," and "the effect of reinstatement of the same policy after the claimed cancellation." On Farmers' motion, the trial court limited Knight's testimony and found that certain subjects about which he proposed to testify were irrelevant. The irrelevant subjects included the issue of whether Farmers effectively cancelled coverage. The order prohibited Knight from "providing any testimony or expressing any opinions regarding bad faith, violations of the New Mexico Insurance Practices Act and violations of the New Mexico Unfair Trade Practices Act" or "any opinions regarding the New Mexico Insurance Code, except to the extent that such testimony relates to the mailing of [the] Notice of Cancellation." Bank contends this order erroneously restricted Knight's testimony.

{37} Again, the trial court's exclusion of evidence is left to its sound discretion. *Coates v. Wal–Mart Stores, Inc.,* 1999–NMSC–013, ¶ 36, 127 N.M. 47, 976 P.2d 999. Included within that discretion is the trial court's determination of what constitutes relevant evidence. *See Cent. Sec. & Alarm Co. v. Mehler,* 1996–NMCA–060, ¶ 38, 121 N.M. 840, 918 P.2d 1340. The subjects the trial court excluded from Knight's testimony were relevant only to the issues raised in Bank's proposed amended complaint, and the court had already postponed consideration of the

amendment until after trial. The only issue at trial was whether Farmers had effectively cancelled coverage, and Knight's anticipated testimony did not relate to that issue. Therefore, we cannot say that the trial court abused its discretion in limiting Knight's testimony.

 {38} Bank argues that "striking the [P]laintiff's expert witness Ted Knight is a denial of due process guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution and the New Mexico Constitution[,] *Art. II, Sec. 18,* or an abuse of discretion." Apart from this conclusory statement, Bank does not cite to and we do not find any portion of the record or transcript where Bank made this legal argument to the trial court. Consequently, we need not consider this contention. *See Crutchfield v. N.M. Dep't of Taxation & Revenue,* 2005–NMCA–022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court.").

### III. Other Arguments

 {39} Bank appears to make several additional arguments that are extremely difficult to understand. For example, Bank seems to argue that Farmers was estopped from denying coverage because the lienholder's certificate showed the expiration of coverage as "CONTINUOUS UNTIL CANCELLED." However, Bank does not recite an applicable standard of review, cite to the record, or develop any of these additional arguments in an understandable way. We need not consider unclear arguments. *See Clayton v. Trotter,* 110 N.M. 369, 373, 796 P.2d 262, 266 (Ct.App.1990).

### IV. Consolidation Issue

{40} Turning to the appeal from the second lawsuit regarding the order of consolidation, we first examine whether the order of consolidation is final for purposes of appeal. We hold that it was a final order, and we then consider whether the consolidation was proper.

### A. The Order Of Consolidation Is a Final Order for Purposes of Appeal

 {41} This Court has appellate jurisdiction over "any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights, in any civil action in the district court." NMSA 1978, § 39–3–2 (1966). An order or judgment is considered final if "all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (internal quotation marks and citation omitted). In determining whether an order is final, we consider the substance of an order or judgment, rather than the form. *Id.* at 240, 824 P.2d at 1042 ("[F]inal is a practical, rather than technical term, and its meaning is to be developed from case to case with the aim of achieving judicial efficiency without loss of meaningful review." (internal quotation marks and citation omitted)).

{42} We consider finality against the backdrop of New Mexico public policy, which "disfavor[s] piecemeal appeals." *Id.* at 239, 824 P.2d at 1041. Despite this policy, our jurisprudence has permitted appeals from certain orders even though a disputed issue remains. For example, in *Kelly Inn,* our Supreme Court recognized as final an order declaring the rights and liabilities of the parties even though a motion for attorney fees was still pending. *Id.* at 244, 824 P.2d at 1046. Similarly, we have determined that an order of remand is final for appeal in certain circumstances. *See State v. Montoya,* 2005–NMCA–005, ¶ 5, 136 N.M. 674, 104 P.3d 540 (holding that a district court order remanding to magistrate court to impose the original sentence, following a de novo appeal from magistrate court where the district court found the defendant guilty, was a final judgment because the magistrate court had .no discretion and was limited to the "purely ministerial act of imposing the original sentence"). The bottom line is that "[t]he considerations that determine finality are not abstractions but have reference to very real

interests—not merely those of the immediate parties, but, more particularly, *those that pertain to the smooth functioning of our judicial system.*" *Kelly Inn,* 113 N.M. at 239, 824 P.2d at 1041 (alteration in original) (emphasis added) (internal quotation marks and citation omitted).

{43} Usually an order of consolidation is not a final judgment because it does not dispose of the case or address the merits. Consolidation under Rule 1–042 normally results in one combined trial of the matters consolidated. *See* Rule 1–042(A) ("When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial[.]"). In this case, whether the consolidation would result in trial depends on our disposition of the appeal from the first lawsuit.

{44} Because we affirm the merits of the first lawsuit, the order of consolidation is more like a final judgment from which Bank has the right to appeal. The district court in the first lawsuit will not have another trial in that case. However, the order of consolidation consolidated the claims in the second lawsuit for determination by the court in the first lawsuit. The district court is almost certain to dismiss the second complaint because it has already decided that the nearly identical claims in the proposed amended complaint should not be allowed. Our affirming the first lawsuit effectively terminates the claims raised in the second lawsuit, resolving the suit in favor of Farmers.

{45} Our decision that the order of consolidation is final is supported by the policies of judicial efficiency and facilitation of meaningful appellate review. With respect to the policy of judicial efficiency, we note that entertaining appeals from non-final judgments and orders would usually result in multiple appeals. However, this is not the case under the unique circumstances before us. It would be more efficient for this Court to consider the propriety of the order of consolidation now. This Court is already considering the appeal arising from the first lawsuit, which stems from the same set of facts that gives rise to the second lawsuit. Moreover, if this Court declined to consider the order of consolidation now, Bank will likely appeal the claimed error of consolidation once the court from the first lawsuit makes a formalistic disposition of the claims in the second lawsuit.

{46} Additionally, this Court should decide this issue now because New Mexico public policy favors appellate courts providing meaningful review. Because the facts and procedural posture of this case are unique, this Court has the opportunity to provide swift resolution of these cases. It is unlikely that these circumstances will occur again, and our disposition of the merits of the consolidation order will likely prevent this scenario from happening in the future. Furthermore, because the question of whether consolidation was proper is legal in nature, further development of the record is unnecessary for meaningful review.

{47} We caution that this holding should not be read to mean that orders of consolidation or other interlocutory orders will be considered final for appeal in the future. We limit our holding to the unique facts of this case.

**B. The Order of Consolidation Was Improper Because the First Lawsuit With Which the Second Lawsuit Was Consolidated Was Already on Appeal**

{48} The issue is whether the trial court erred by consolidating Bank's claims against Farmers in the second lawsuit with the first lawsuit, which had already been tried by a jury and which was on appeal at the time the order of consolidation was entered. This Court ordinarily reviews a trial court's decision to consolidate under an abuse of discretion standard. *Bloom v. Lewis,* 97 N.M. 435, 438, 640 P.2d 935, 938 (Ct.App. 1980), *aff'd in part, rev'd in part on other grounds,* 96 N.M. 63, 628 P.2d 308 (1981). However, "we may characterize as an abuse of discretion a discretionary decision that [is] premised on a misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted).

{49} Bank raises four arguments in support of its position that the trial court in

the second lawsuit erred in granting Farmers' motion to consolidate. Two of Bank's arguments focus on the language of the rule itself and maintain that consolidation was improper because the second lawsuit was not "before the court" that had jurisdiction over the first lawsuit, and because the first lawsuit was no longer "pending." Bank also asserts that in order for Farmers to move to consolidate, it first had to request a change of venue. Finally, Bank argues that the policies in favor of consolidation such as judicial efficiency and conservation of the parties' resources were not present in this case, and, therefore, consolidation was improper. Because we hold that the first lawsuit was not pending before the court, we need not address Bank's other arguments.

{50} "We apply the same rules to the construction of Supreme Court rules of procedure as we apply to statutes." *In re Michael L.*, 2002–NMCA–076, ¶ 9, 132 N.M. 479, 50 P.3d 574. This is a question of law that we review de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. "In interpreting [rules], we seek to give effect to the [enacting authority's] intent, and in determining intent we look to the language used and consider the [rule's] history and background." *Key v. Chrysler Motors Corp.*, 1996–NMSC–038, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55 (1996), *aff'd in part, rev'd in part on other grounds*, 2000–NMSC–010, 128 N.M. 739, 998 P.2d 575.

{51} The language of Rule 1–042(A) provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial." The issue of whether an appeal is a "pending" action for purposes of consolidation is an issue of first impression in New Mexico.

{52} The parties make arguments based on cases interpreting the word "pending" in the context of article IV, section 34 of the New Mexico Constitution. That constitutional provision states that "[n]o act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." N.M. Const. art. IV, § 34. The purpose of that constitutional provision is to avoid legislative interference with the adjudication of cases. *See Brazos Land, Inc. v. Bd. of County Comm'rs*, 115 N.M. 168, 171, 848 P.2d 1095, 1098 (Ct.App.1993). In interpreting the word "pending" for purposes of the constitutional provision, this Court has said that our Supreme Court "appear[s] to equate a pending case with a case that is in the process or course of litigation and which has not been concluded, finished, or determined by a final judgment." *DiMatteo v. County of Dona Ana*, 109 N.M. 374, 377, 785 P.2d 285, 288 (Ct.App.1989) (internal quotation marks omitted). Although the cases interpreting the word "pending" within the context of the constitutional provision do not specifically say whether a case that is on appeal is "pending," in *State v. Druktenis*, 2004–NMCA–032, ¶¶ 39, 43, 135 N.M. 223, 86 P.3d 1050, this Court suggested that for purposes of this constitutional provision, an appeal would be considered pending.

{53} Reliance on this line of cases is misplaced. The purpose of Rule 1–042 is distinguishable from that of the constitutional provision. A broad interpretation of the word "pending" is appropriate in the context of the constitutional provision because it seeks to prevent legislative interference at any and all stages of judicial proceedings. By contrast, as stated in the rule itself, the purpose of Rule 1–042(A) is to "avoid unnecessary costs or delay." Our courts have recognized that the purpose of consolidation is to "expedit[e] litigation and decreas[e] the expense thereof." *Vargas v. Clauser*, 62 N.M. 405, 410, 311 P.2d 381, 384 (1957). Thus, the rule has a much narrower focus than the constitutional provision. We therefore consider the meaning of "pending" in the context of this focus on expediency and efficiency.

{54} There appears to be no authority that addresses the consolidation of claims in one suit that is in the early stages of litigation with another suit that is on appeal. However, we conclude that consolidation is improper when the case with which claims are being consolidated is on appeal.

{55} Consolidation with a case that is already on appeal does not achieve the goal of

saving the court and parties time and money. While it is clear that "[a]ctions pending at different stages of discovery may be consolidated," 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2382 at 434–35 (2d ed.1994), consolidation further along in the proceedings will result in diminished savings of time and expense. *See id.* This case provides us with an example of when consolidation is no longer efficient. The first lawsuit went through the normal course of litigation—pleadings, discovery, and eventual jury trial on a single issue. During discovery in the first lawsuit, the parties did not address the claims that were later consolidated with it by the trial court in the second lawsuit. The consolidation will not save the parties from having to conduct further discovery on the claims. The trial preparation by the parties and trial court in the first lawsuit was finished long before the second suit was even filed. Therefore, if there is going to be a trial on the consolidated claims, the parties and court will have to go through additional preparations. Consolidating a newly filed case with a case that is already on appeal defeats the purpose of Rule 1–042(A).

{56} Based on the above reasons, we hold that in this case the two actions should not have been consolidated. We can conceive of circumstances where the pendency of a case is not dependent on the filing of a notice of appeal, but we are not confronted with that issue here. For purposes of this case, at a minimum, once the notice of appeal was filed, the case was no longer pending for purposes of consolidation.

{57} We therefore reverse the order of consolidation and remand the Grant County Case. If Farmers wants to enjoy the benefit of res judicata or another preclusion doctrine triggered by resolution of the first lawsuit, which doctrines Farmers asserted as affirmative defenses in its answer to the complaint in the second lawsuit, the appropriate procedure is not to move for consolidation, but rather to file a motion to dismiss based on the appropriate doctrine.

## CONCLUSION

{58} For the foregoing reasons, we affirm the judgment in the first lawsuit (Hidalgo County Cause No. CV 2001–38) and reverse the order of consolidation in the second lawsuit (Grant County Cause No.2005–205). We remand to the respective district courts for proceedings consistent with this opinion.

{59} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and RODERICK T. KENNEDY, Judges.