7 P.3d 495

2000-NMCA-066

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Karen DURANT, Defendant–Appellant.**

**In the Matter of Vernon O.M. Henning,**
**Contemnor–Appellant.**

Nos. 20,564, 20,660.

Court of Appeals of New Mexico.

June 30, 2000.

Patricia A. Madrid, Attorney General, Anthony Tupler, Assistant Attorney General, Santa Fe, for Appellee in No. 20,564.

Sandy Barnhart Y Chavez, Rio Rancho, for Appellant in No. 20,564.

Patricia Madrid, Attorney General, Steven S. Suttle, Assistant Attorney General, Santa Fe, for Appellee in No. 20,660.

Vernon O.M. Henning, Hobbs, Pro Se Contemnor–Appellant.

## OPINION

PICKARD, Chief Judge.

{1} We consolidate these appeals for opinion because they raise the common question of whether a conditional discharge order in a criminal case is a sufficiently final order to allow an appeal from it. We hold that a conditional discharge order in a felony prosecution is sufficiently final to be appealable, but that a similar order in a criminal contempt prosecution is not, at least when the order does not require any action or behavior on the part of the contemnor other than to obey the law in the future. We therefore dismiss Henning's appeal and proceed to decide Durant's appeal.

{2} Durant appeals from a conditional discharge order following jury convictions for armed robbery and criminal damage to property. She raises four issues on appeal: (1) insufficient evidence of robbery, (2) insufficient evidence of criminal damage, (3) error in admitting hearsay, and (4) non-unanimous jury. We agree with her contention that there was insufficient evidence of robbery, but affirm the order as it involves the criminal damage charge. The particular facts of this case will be stated following our discussion of the appealability of the conditional discharge orders.

## APPEALABILITY

### Procedural Background

{3} Henning was ordered to show cause why he should not be held in contempt and imprisoned or fined for failure to appear at a pretrial conference. Following a hearing, the district court found that Henning had notice of the conference and did fail to appear for it without just cause or excuse. Based on these findings the district court found that Henning "should be held in Contempt of Court but the Court FURTHER FINDS that such adjudication should be deferred for six (6) months." The decretal part of the order states:

IT IS THEREFORE ORDERED that the adjudication of this matter is deferred for six (6) months from the date hereof on the condition that Mr. Henning appears at all times and places set by any Court in the Fifth Judicial District during such six (6) months, at which time this Order may be withdrawn by the Court and this proceeding dismissed.

{4} Durant was charged with a variety of felonies and misdemeanors. At trial, the jury convicted her of armed robbery and criminal damage to property, but acquitted her of the other charges. The district court entered a conditional discharge order pursu-

ant to NMSA 1978, § 31–20–13 (1994). The order referred to the findings of the jury and ordered that, "without adjudication of guilt, further proceedings be deferred" and Durant be placed on probation for 18 months, complete the supervision required by the probation authorities, and complete alcohol treatment.

## Discussion

{5} It has long been the rule that, absent an express statute or rule, an appeal will not lie from anything other than a formal written order or judgment, signed by the judge and filed in the record in the case. *See State v. Morris,* 69 N.M. 89, 90–91, 364 P.2d 348, 349 (1961). Further, in criminal cases, "'the judgment is final for the purpose of appeal when it terminates the litigation on the merits and leaves nothing to be done but [enforcement] .... A sentence must be *imposed* to complete the steps of the prosecution.'" *Id.* at 91, 364 P.2d at 349 (quoting *Zellers v. Huff,* 57 N.M. 609, 611, 261 P.2d 643, 644 (1953)). A final judgment in a criminal case either adjudicates the defendant guilty and imposes, suspends, or defers sentence or dismisses the charges. *See State v. Garcia,* 99 N.M. 466, 471, 659 P.2d 918, 923 (Ct.App.1983).

{6} Appeals are permitted by statute from a "judgment" of civil contempt or a "conviction" of criminal contempt. *See Henderson v. Henderson,* 93 N.M. 405, 406, 600 P.2d 1195, 1196 (1979). Relying on *Zellers,* the *Henderson* Court held that, because no sentence was imposed on Ms. Henderson, no appeal was available. *See id.* "The contempt finding, of itself, is not subject to appeal." *Id.*

{7} The foregoing recitation of the finality rule appears to be based on the much-quoted language that "'an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible.'" *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (quoting *B.L. Goldberg & Assocs. v. Uptown, Inc.,* 103 N.M. 277, 278, 705 P.2d 683, 684 (1985)). We may term this the "last act" rationale for the finality rule.

As Justice Montgomery went on to state, however, this general rule is not "an absolute, inflexible rule, like the law of gravity," but is instead "a general proposition admitting of various exceptions." *Id.* Further, "the term 'finality' is to be given a practical, rather than a technical, construction." *Id.*

{8} One exception, or practical construction of the term "finality," appears to exist when the consequences of the order that is not the last contemplated order in the case are sufficiently severe that the aggrieved party should be granted a right to appeal to alleviate hardship that would otherwise accrue if the appeal were delayed. We may term this the "sufficiently aggrieved" rationale for the finality rule. Thus, for example, in criminal cases, adult defendants who are ordered to undergo diagnostic evaluations before they are sentenced are required to wait until they are sentenced before they appeal. *See Garcia,* 99 N.M. at 468, 659 P.2d at 920 (reciting the earlier history of the case in which Garcia's appeal from the diagnostic commitment was dismissed by memorandum opinion relying on *Morris* because there was no final sentence). In juvenile cases, however, because of the express legislative purpose to avoid separating the child from its family, similar orders of diagnostic commitment have been held to be immediately appealable. *See In re Doe, III,* 87 N.M. 170, 171, 531 P.2d 218, 219 (Ct.App.1975). A child in such a situation is sufficiently aggrieved, while an adult is not.

{9} The rule in other jurisdictions on the specific issue of appealability of conditional discharge orders appears to partake of both the rationales of the general rule and the exception. Thus, in both *Rash v. State,* 318 A.2d 603, 604–05 (Del.1974), and *State v. Ryback,* 64 Wis.2d 574, 219 N.W.2d 263, 267 (1974), the courts followed the general rule that the conditional discharge order was not final because no sentence was imposed and the proceedings were not ended. It appeared to be important to both courts' rulings that the choice of accepting a conditional discharge order was the defendant's, a choice that does not appear in our Section 31–20–13. In *Warren v. State,* 281 Md. 179, 377 A.2d 1169, 1174 (1977), and subsequently *State v.*

*Bikle,* 60 Haw. 576, 592 P.2d 832, 835 (1979), it was both the absence of a sentence and the lack of significant consequences arising from the conditional discharge order that persuaded the courts to rule such orders to be nonfinal. As *Warren* states:

> Missing here is an additional element, the entry of a judgment upon the finding of guilt. Nor is this merely a technical distinction, for though a suspended sentence avoids a fine or prison term, it is also the judgment upon the finding of guilt and *the collateral effects of that judgment* which the defendant seeks to avoid.

*Id.* at 1174 (emphasis added).

**{10}** We find this language to be persuasive. It permits us to draw a clear distinction between Durant's felony case and Henning's contempt case. In the felony case, Durant argues that the presence of conditional discharge language in the habitual offender statute is just the sort of collateral consequence or sufficient aggrievement that should permit her to take an appeal from her conditional discharge order. NMSA 1978, § 31–18–17(B), [ (C), and (D) ] (1993) provides that "Any person convicted of a noncapital felony in this state ... who has incurred one [, two, or three or more] prior felony conviction[s] ... or conditional discharge ... is a habitual offender and his basic sentence shall be increased ...." Thus, unless a defendant in a felony case is permitted to appeal the conditional discharge order, it can later be used to enhance the sentence.

**{11}** In the contempt case, however, there are no such collateral consequences, and therefore there is no reason not to apply the general, last-act finality rule. Indeed, in Henning's case, there appear to be no consequences whatsoever to the trial court's order saying that, while Henning "should" be found in contempt, the adjudication would be deferred for six months and Henning should attend properly noticed court dates. Accordingly, we dismiss Henning's appeal and proceed to consider Durant's.

### DURANT'S APPEAL

#### Facts

**{12}** Durant was charged with a variety of felonies and misdemeanors, including armed robbery, aggravated battery (two counts), extortion, criminal trespass, and criminal damage to property. The charges grew out of an incident in which she went to the victims' home early one morning to try to collect money from one of the victims who was supposed to fix her fence, but allegedly did not do it; to try to collect other money she allegedly loaned to this victim; and to try to recover a skill saw he allegedly stole from her. Police officers, testifying mainly on the basis of statements made by one of the victims and Durant herself, testified to the following facts in the light most favorable to the State: Durant came to the victims' residence and demanded money; when the victims confronted her on the porch and told her she had to leave, Durant stabbed both of them with a knife; as she was leaving Durant took their dog; and there was a broken window at the home. Durant herself testified and her testimony established that she broke the window trying to get the victims to wake up. She also claimed that she acted in self defense and that the victims impaled themselves on her knife with which she was merely threatening them after one of them hit her with a pipe.

### Sufficient Evidence of Robbery

**{13}** Relying on *State v. Baca,* 83 N.M. 184, 489 P.2d 1182 (Ct.App.1971), and *State v. Sanchez,* 78 N.M. 284, 430 P.2d 781 (Ct.App.1967), Durant contends that there is insufficient evidence of armed robbery because there was no evidence that any of her threats or force were the lever by which the victims parted with their dog. We agree. Although, under *State v. Salgado,* 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661, we review the evidence in the light most favorable to the State, the evidence in this case is undisputed that Durant did not take the dog until she was on her way off of the victims' property. The State contends that Durant's prior violence against the victims was the lever by which the dog was taken, but that evidence is no different than the evidence in *Baca* that the defendant there jumped over a bar with a butcher knife, taking the bartender by surprise, and then took money from the register, or the evi-

dence in *Sanchez* that the defendant there put his fist against the victim's back, took the victim's wallet, and then backed out of the room. In both those cases, the convictions were reversed for insufficiency of evidence. Therefore, we reverse the armed robbery verdict here.

### Sufficiency of Evidence of Criminal Damage to Property

{14} Durant contends that the evidence was insufficient to sustain the verdict for criminal damage to property because she testified that she knocked on the window to wake the victims up and she did not intend to break the window. The State confesses error on this point because there was no evidence in the State's case in chief to establish how the window was broken. It is the rule, however, that deficiencies in the State's case can be made up in the defense's case. *See State v. Mead,* 100 N.M. 27, 32, 665 P.2d 289, 294 (Ct.App.1983) (pointing out that "by testifying defendant supplied the necessary proof from which the jury could infer" guilt), *rev'd on other grounds, State v. Segotta,* 100 N.M. 498, 672 P.2d 1129 (1983); *State v. Lard,* 86 N.M. 71, 73, 519 P.2d 307, 309 (Ct.App.1974) (holding that, by electing to testify, a defendant waives any claim that the evidence at the close of the state's case is insufficient to submit to the jury). Furthermore, because the public interest in the proper outcome of criminal appeals does not permit their disposition by party stipulation, we independently review the proceedings to see if the error conceded by the State is supported by the record. *See State v. Maes,* 100 N.M. 78, 80–81, 665 P.2d 1169, 1171–72 (Ct. App.1983). Therefore, we review the record to determine if the evidence was sufficient to support a verdict for criminal damage to property.

{15} The specific question raised is whether Durant's denial of any intent to break the window is controlling. It is not. Our cases have long held that a jury may disbelieve a defendant's testimony. *See State v. Vigil,* 87 N.M. 345, 350, 533 P.2d 578, 583 (1975). Intent can rarely be proved directly and often is proved by circumstantial evidence. *See State v. Wasson,* 1998–

NMCA–087, ¶12, 125 N.M. 656, 964 P.2d 820. In this case, as in both *State v. Hoeffel,* 112 N.M. 358, 361, 815 P.2d 654, 657 (Ct.App. 1991), and *Lard,* 86 N.M. at 73, 519 P.2d at 309, in which the defendants testified to plausible exculpatory versions, there was sufficient circumstantial evidence to prove Durant's intent to damage the property. There was the evidence recited above of Durant's visit to the victims' house early in the morning, at a time she admitted they would likely be asleep. She also admitted that her dispute with the victim who owed her the money had been building up for several weeks and she felt that the victim was avoiding her. She knocked loudly on the door and got no answer, so she went and knocked on a window, thereby breaking it. She had a knife, from which the jury could infer that she was ready for a fight. She was angry and took the dog after the incident. These facts are sufficient to allow a rational jury to infer that Durant intended to break the window.

### Hearsay

{16} Durant contends that the trial court erred in admitting the hearsay statement of one of the victims given to a police officer about one or two hours after the incident. The trial court admitted the statement after hearing evidence that the victim had a stab wound to her arm and appeared visibly shaken; her hands were shaking; she was upset; and the other victim, who also had a slash wound to his arm, appeared in shock and could not talk. This foundational testimony is sufficiently similar to that in our recent decision *State v. Hernandez,* 1999– NMCA–105, ¶¶10–15, 127 N.M. 769, 987 P.2d 1156, for *Hernandez* to control. The trial court did not abuse its discretion in admitting the hearsay statement. *See id.*

### Unanimous Jury

{17} Durant contends that the trial court should have granted her motion for a mistrial when one of the jurors indicated, during the poll of the jury, that it was not his verdict. When questioning the last juror to be questioned, the juror stated, in response to the question "were these your verdicts?", "I voted different on counts 1, 2 and 3." The juror

then explained that he was relying on majority rule.

{18} There are two reasons to reject Durant's contention. First, count 1 was the armed robbery count, which we reverse, and counts 2 and 3 were aggravated battery counts of which Durant was acquitted. Thus, error, if any, is entirely harmless as it does not affect any of Durant's rights. *See State v. Wright*, 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972) (holding that in order to be reversible, error must be prejudicial).

{19} Second, upon interrogation, the juror explained, albeit in a confusing fashion, that he should not have answered the judge the way he did, that it was too confusing. He explained, or so the trial court could have understood, that while the jury first agreed to a majority rule, in the end everyone voted his or her own vote on each count.

## CONCLUSION

{20} We dismiss Henning's appeal. On Durant's appeal, we reverse the armed robbery verdict and order Durant discharged on that count and affirm the criminal damage verdict and conditional discharge order based on it.

{21} **IT IS SO ORDERED.**

SUTIN and KENNEDY, JJ., concur.