This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. 29,041**

**EVON SOLIS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline E. Cooper, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant appeals her conviction of embezzlement in excess of $500 but not more than $2500. On appeal, we address Defendant's arguments that (1) the State presented insufficient evidence to support Defendant's conviction, (2) an officer's testimony that Defendant failed to appear for a scheduled polygraph was an impermissible comment on Defendant's exercise of her right to remain silent and violated her due process rights, (3) the State improperly admitted an internal deposit slip into evidence without sufficient foundation because the person who prepared the slip did not testify at trial, and (4) she received ineffective assistance of counsel. We affirm.

**BACKGROUND**

Defendant appeals her conviction of embezzlement in excess of $500 but not more than $2500, contrary to NMSA 1978, Section 30-16-8(A), (D) (2007). The conviction arose from a deposit Defendant was supposed to make on behalf of her employer, Smart Style Salon (the salon), on August 8, 2007, at the Western Commerce Bank (the bank) in Hobbs, New Mexico. On the day in question, the salon's manager had an injured arm, was not present, and left Defendant and another employee, Rosemary Rodriguez, in charge of closing the salon at the end of the day.

Rodriguez counted the cash and the checks that were received as the revenue earned by the salon that day, and Rodriguez asked Defendant to deposit the funds at

2

the bank. Defendant had previously made the salon's nightly deposit on one other occasion. On August 16, 2007, the manager informed Defendant that the bank never received the deposit. Shortly thereafter, Corina Terrazas, an employee of the salon who was sharing managerial duties in the manager's absence, reported a possible embezzlement to the police.

Defendant testified on her own behalf at trial and maintained that she in fact made the deposit as directed. She testified that, on August 8, 2007, she left the salon around 9:30 p.m., with the deposit. She stated that she drove about fifteen minutes to her mother's house to pick up her son and daughter. Once she arrived at her mother's house, Defendant spoke with her mother for twenty minutes, took five minutes to secure her children in her vehicle, and then took fifteen minutes to drive to the bank. After arriving at the bank around 10:30 p.m., Defendant waited for a woman who arrived before her, and then placed the deposit in the night deposit drop box without checking to make sure that it successfully dropped. Defendant also testified that she continued to work at the salon until December 2007 and was entrusted to make three or four additional deposits after August 8, 2007.

We address each point of appeal below.

**SUFFICIENCY OF THE EVIDENCE**

We review the sufficiency of the evidence pursuant to a substantial evidence

standard. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (alteration in original) (internal quotation marks and citation omitted). We evaluate the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We will not substitute our judgment for that of the factfinder, nor will we reweigh the evidence. *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

In order for the jury to convict Defendant of embezzlement, the State had to prove beyond a reasonable doubt that:

1.    . . . [D]efendant was entrusted with money in excess of $500;

2.    . . . [D]efendant converted this money to . . . [D]efendant's own use. 'Converting something to one's own use' means keeping another's property rather than returning it, or using another's property for one's own purpose rather than for the purpose authorized by the owner;

3.    At the time . . . [D]efendant converted the money, . . . [D]efendant fraudulently intended to deprive the owner of the owner's property. 'Fraudulently intended' means intended to deceive or cheat[.]

4

Defendant concedes that the State presented sufficient evidence that Defendant was entrusted with funds, but she argues that the evidence was insufficient to support the dollar amount, whether she converted the funds to her own use by failing to deposit the funds, and whether she intended to embezzle the funds.

Regarding the dollar amount, Terrazas testified that the salon's internal deposit slip reflected that Defendant was supposed to deposit $1053.27, including $773.43 in cash and $279.84 in checks on August 8, 2007. The district court admitted the deposit slip with these amounts into evidence. This evidence is sufficient for a rational fact finder to conclude that the amount the salon entrusted Defendant to deposit was greater than $500. *See Garcia*, 114 N.M. at 274, 837 P.2d at 867.

Further, the evidence supports the jury's determination that Defendant converted the deposit funds to her own use by failing to deposit the funds and acted intentionally. Valerie Pierce, a teller-supervisor at the bank, testified for the State. Her job included reviewing the records for all night deposits and confirming the receipts of the deposits. She testified that the bank did not receive a deposit from the salon on August 8, 2007. Pierce further testified that she reached this conclusion by reviewing the night deposit records, viewing the surveillance tape that monitors the night deposit drop box from 9:00 to 11:00, and comprehensively searching the bank for the missing deposit. She also testified that the night deposit drop box has sharp

metal claws that prevent a deposit from being externally retrieved from the chute, that the angle of the chute prevents deposits from getting stuck, and to her knowledge, the bank has never lost a deposit. Officer Travis Jackson also testified for the State. He interviewed Defendant while investigating the possible embezzlement, and Defendant did not mention having any difficulty making the deposit. Officer Jackson also examined the bank's records and the night deposit drop box, which he found to be secure from external tampering. Officer Ted Fuller also testified that he watched the surveillance tape that monitors the night deposit drop box from 8:00 to 10:30 p.m. on August 8, 2007 and did not see Defendant making the deposit. This testimony is sufficient for a rational factfinder to conclude that Defendant converted the funds she was supposed to deposit by keeping them for her own personal use. *See Garcia*, 114 N.M. at 274, 837 P.2d at 867.

To the extent that Defendant argues that this testimony was insufficient for a rational factfinder to conclude that she "intentionally converted the funds," we disagree. "[T]he element of intent is seldom susceptible to direct proof and accordingly may be proved by circumstantial evidence." *State v. Dowling*, 2011-NMSC-016, ¶ 22, 150 N.M. 110, 257 P.3d 930 (alteration in original) (internal quotation marks and citation omitted); *see also State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495 (recognizing that "[i]ntent can rarely be proved directly

6

and often is proved by circumstantial evidence"). By presenting evidence that the salon entrusted Defendant to make the deposit and that the deposit was never made, the evidence was sufficient for the jury to conclude that Defendant acted intentionally to convert the funds. *See State v. James*, 109 N.M. 278, 280-81, 784 P.2d 1021, 1023-24 (Ct. App. 1989) (affirming the defendant's conviction for embezzlement and observing that "[t]he fact that the evidence is circumstantial makes no difference"). Sufficient evidence supported Defendant's conviction for embezzlement.

**COMMENT ON SILENCE**

Defendant argues that the State presented impermissible testimony commenting on her right to silence after being advised of the warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), by eliciting testimony from Officer Fuller that Defendant failed to show up for a scheduled polygraph exam. Officer Fuller, who helped investigate the possible embezzlement, testified on behalf of the State. He testified that he interviewed Defendant on November 15, 2007, and read Defendant her *Miranda* rights. Defendant signed a form, waiving her *Miranda* rights. During Officer Fuller's testimony, the following exchange took place:

State: Did you arrange any further appointments with her?

Officer Fuller: Yes, I did. . . . I had asked [Defendant] if she would agree to a polygraph examination there at the Hobbs police department. She stated that she would. I advised her that I would contact her . . . and set a time and date. She was notified of the time and date, which was

7

December 11, 2007. . . .

State: Did she show up for her appointment?

Officer Fuller: No, she did not.

State: Were you able to get ahold of her after that point?

Officer Fuller: I don't remember if we contacted her or not. Shortly thereafter, a warrant was issued for her arrest.

State: Did she try to contact you? . . .

Officer Fuller: Not that I recall. She may have, but I do not recall her making any contact or attempt.

In her testimony on direct examination, Defendant testified that Laura Castillo, a friend and assistant district attorney, advised her not to take the polygraph exam and that she attempted to call Officer Fuller to cancel the polygraph twice but never received a return phone call.

Generally, a prosecutor is prohibited from commenting on a defendant's silence or introducing evidence that a defendant exercised the right to silence. *State v. Foster*, 1998-NMCA-163, ¶ 9, 126 N.M. 177, 967 P.2d 852. As a matter of due process, "[w]hen a defendant has invoked the right to remain silent after being given *Miranda* warnings, use of that silence by the prosecution at trial violates due process." *Id.* ¶ 11.

As an initial matter, although Defendant concedes that she did not properly object to Officer Fuller's testimony regarding Defendant failing to show up to the

8

scheduled polygraph exam, Defendant argues that this Court in *State v. Hennessy*, 114 N.M. 283, 837 P.2d 1366 (Ct. App. 1992), *overruled on other grounds by State v. Lucero*, 116 N.M. 450, 863 P.2d 1071 (1993), held that "automatic reversal regardless of objection is employed largely as a prophylactic measure against such prosecutorial misconduct." However, we disagree that *Hennessy* requires automatic reversal in all cases in which there is testimony that implicates a defendant's exercise of the right to remain silent. In *Hennessy*, the defendant testified on direct examination that his original statement to the police was false. *Hennessy*, 114 N.M. at 285, 837 P.2d at 1368. On cross-examination, the state questioned the defendant as to whether he ever contacted the police after his initial statement in order to correct that statement and, in closing, referenced that the defendant did not correct the initial statement and tell the police the truth. *Id.* This Court reversed the defendant's conviction, holding that "the fact that the prosecutor intentionally elicited direct comment on the exercise of [the] defendant's rights, despite our repeated admonitions not to do so, amounted to fundamental error under the fair trial branch of that doctrine." *Id.* at 289, 837 P.2d at 1372. However, this Court did not require a rule of automatic reversal as Defendant argues. We stated that "[defendants] who fail to object to improper comments . . . in other cases may risk waiver of the issue on appeal or affirmance of the conviction, despite error, due to the compelling nature of the evidence introduced against the

9

defendant at trial." *Id.*

We therefore review for fundamental error. *See State v. DeGraff*, 2006-NMSC-011, ¶ 21, 139 N.M. 211, 131 P.3d 61 ("When a defendant fails to object at trial to comments made by the prosecution about his or her silence, we review only for fundamental error[.]"). Under this standard of review, we first determine whether error actually occurred, and if there was error, our second step is to determine whether that error was fundamental. *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. An error is fundamental and requires reversal only in cases where "the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served." *Id.* ¶ 13 (internal quotation marks and citation omitted). This Court "considers only whether the defendant has shown that there is a reasonable probability that the error was a significant factor in the jury's deliberations relative to the other evidence before them." *DeGraff*, 2006-NMSC-011, ¶ 22. Fundamental error does not occur when "the prejudicial effect of the prosecutor's comments was minimal and the evidence presented by the prosecution was overwhelming." *Id.* ¶ 21.

The State argues that Officer Fuller's testimony that Defendant did not show up for a scheduled polygraph exam differs from the error in this Court's decision in

10

*State v. Casaus*, 1996-NMCA-031, ¶ 36, 121 N.M. 481, 913 P.2d 669. In *Casaus*, this Court held that the state's questioning that elicited a response that the defendant was willing to take a polygraph exam is not prejudicial to the defendant's right to remain silent and that this rule applies regardless of whether the defendant took the polygraph exam. *Id.* ¶¶ 33-37. In this case, however, Officer Fuller's testimony went beyond whether Defendant was willing to take a polygraph exam. The State asked Officer Fuller whether Defendant showed up for the scheduled polygraph exam, and Officer Fuller responded that Defendant did not. The inference that the State elicited from this testimony was that Defendant had a reason, guilt, for not showing up and taking the exam. Therefore, the questioning and testimony regarding the polygraph exam was error because it was an impermissible comment on Defendant's right to silence. *See id.* ¶ 36 (stating that error might have occurred if "the [s]tate had elicited testimony that [the d]efendant was *not* willing to take a polygraph exam").

However, the impermissible comment on Defendant's right to silence does not require reversal in this case under our fundamental error standard of review. As we discussed when examining the sufficiency of the evidence, in this case, the State's evidence against Defendant was strong. Pierce and Officer Fuller both testified that they watched the surveillance tape from the bank and that Defendant did not make the deposit on the night of August 8, 2007. Pierce and Officer Jackson both examined the

11

bank's records and found no evidence of a deposit, and Pierce comprehensively searched the entire bank for the missing deposit and testified that the bank had never lost a deposit. Pierce and Officer Jackson also each testified that the night deposit drop box was tamper proof. In addition to the strong evidence, the prejudicial effect of the testimony was minimal. The whole exchange between Officer Fuller and the State regarding Defendant's failure to show up to the scheduled polygraph exam took just over one minute. Further, Defendant ameliorated the prejudicial effect by testifying that she did not take the polygraph exam on the advice of her friend, an assistant district attorney. *See Casaus*, 1996-NMCA-031, ¶ 36 ("Additionally, [the d]efendant had the opportunity on cross-examination to clarify the issue if he thought the jury might be confused, and . . . [w]e therefore hold that the exchange was not improper or prejudicial."). The State also did not mention the polygraph exam or argue that the reason Defendant failed to show up for the polygraph exam was because of guilt in closing. *See DeGraff*, 2006-NMSC-011, ¶ 21 ("We have recognized that more direct prosecutorial comments on a defendant's invocation of the right to remain silent are more likely to be fundamental error."). We therefore do not find that fundamental error occurred by Officer Fuller's testimony regarding Defendant's failure to show up for the scheduled polygraph exam.

**ADMISSION OF DEPOSIT SLIP**

Defendant argues that the State improperly admitted the internal deposit slip that showed the amount Defendant was supposed to deposit into evidence without a sufficient foundation because the person who prepared the slip did not testify at trial. Defendant contends that the foundation for admission under the business record exception to the hearsay rule was absent in this case because the person who filled out the deposit slip, or the supervising manager, as the custodian, did not testify. She stresses that the person who did testify about the deposit slip, Terrazas, is only an assistant manager. This Court reviews "the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. Although, "we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, . . . we apply a de novo standard to review any interpretations of law underlying the evidentiary ruling." *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341.

This issue is governed by Rule 11-803(6) NMRA, which provides a hearsay exception for

A record of an act, event, condition, opinion, or diagnosis if

    (a)   the record was made at or near the time by—or from information transmitted by—someone with knowledge,

13

> (b) the record was kept in the course of a regularly conducted activity of a business, institution, organization, occupation, or calling, whether or not for profit,
>
> (c) making the record was a regular practice of that activity, and
>
> (d) all these conditions are shown by the testimony of the custodian or another qualified witness[.]

"To admit a business record under Rule 11-803([6]), the testifying witness need not be the person who supervised the creation of the record or actually created the record." *Roark v. Farmers Group, Inc.*, 2007-NMCA-074, ¶ 24, 142 N.M. 59, 162 P.3d 896; *see State v. Ruiz*, 94 N.M. 771, 775, 617 P.2d 160, 164 (Ct. App. 1980) ("The phrase 'other qualified witness' should be given the broadest interpretation; he need not be an employee of the entity so long as he understands the system." (internal quotation marks and citation omitted), *superceded by statute on other grounds as stated in Roark*, 2007-NMCA-074. We turn to Terrazas's testimony regarding the internal deposit slips.

Terrazas testified that she reconciles the amount on the internal deposit slip to the "daily closeout book" and that it was her job to do this task every night. She testified that her job includes keeping and maintaining the internal deposit slips for 6-8 months in a file cabinet in the salon. She was required to make sure that the internal deposit slips were correct and would correct them if they did not match the daily close out book. Further, she testified that she does this task in the normal course of

14

business. Her testimony was sufficient to establish that she was either the custodian of the internal deposit slips or an "other qualified witness" familiar with the procedures in maintaining or generating the deposit slips to lay a proper foundation under the business records exception in Rule 11-803(6). *See Roark*, 2007-NMCA-074, ¶¶ 24-26 (holding that a proper foundation was laid by an employee of the defendant that did not create the records, but testified regarding the procedures in maintaining and generating the records); *see also Kirk Co. v. Ashcraft*, 101 N.M 462, 468, 684 P.2d 1127, 1133 (1984) (holding that sales manager was a "qualified witness" to lay a foundation under the business records exception even though he lacked personal knowledge of the accuracy). The district court therefore did not abuse its discretion in admitting the internal deposit slip into evidence.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant lastly argues that she received ineffective assistance of counsel. She contends that counsel failed to conduct pretrial discovery that would have led to filing motions to suppress or a continuance of the trial, did not view the surveillance tape at the bank, or file a motion to suppress regarding the tape. Also, she argues that she received ineffective assistance of counsel when counsel did not object to the admission of evidence regarding her absence from the polygraph exam although it commented on Defendant's right to remain silent. Finally, Defendant contends that

15

counsel failed to conduct pretrial interviews with, and did not call to testify at trial, several individuals who would have provided exculpatory evidence.

In order to establish a prima facie case of ineffective assistance of counsel, it is Defendant's burden to show that (1) counsel's performance fell below that of a reasonably competent attorney, and (2) the deficient performance prejudiced the defense. *State v. Plouse*, 2003-NMCA-048, ¶ 6, 133 N.M. 495, 64 P.3d 522. "Counsel is presumed competent unless a defendant succeeds in showing both the incompetence of his attorney and the prejudice resulting from the incompetence." *Id.* (internal quotation marks and citation omitted). We review counsel's performance in a "highly deferential" manner; "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984). This standard requires the defendant to demonstrate that the errors of counsel "were so serious as to deprive the defendant of a fair trial" such that the results of the trial are not reliable. *Id.* at 687. We will not second guess the trial tactics and strategies of counsel in reviewing a claim of ineffective assistance of counsel. *State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127; *State v. Hester*, 1999-NMSC-020, ¶ 11, 127 N.M. 218, 979 P.2d 729 ("It is not the role of this Court on appeal to second guess trial tactics.").

We first address Defendant's arguments that she received ineffective assistance of counsel because counsel failed to conduct pretrial discovery that would have led to filing motions to suppress or a continuance of the trial, did not view the surveillance tape at the bank, or file a motion to suppress regarding the tape. In each instance, Defendant fails to establish that counsel's performance was deficient. Defendant does not state how counsel's performance in pretrial discovery was ineffective and what evidence that would have led to successful motions to suppress or a continuance of the trial would have been uncovered by proper pretrial discovery. Regarding Defendant's arguments that competent counsel would have filed a motion to suppress testimony regarding the surveillance tape, Defendant does not state the reasons such a motion would have been successful on the merits. Therefore, these arguments are speculative and do not establish that Defendant received ineffective assistance. *See State v. Stone*, 2008-NMCA-062, ¶ 28, 144 N.M. 78, 183 P.3d 963 (rejecting an ineffective assistance of counsel claim because the "[d]efendant has not demonstrated the likely success of his procedural motion" and "the potential success of [the d]efendant's procedural motion was unclear").

Defendant also contends that counsel failed to conduct pretrial interviews with, and did not call to testify at trial, several individuals who would have provided exculpatory evidence, including the salon's area manager who would have testified

that Defendant made the initial contact with police, that Defendant was interviewed by the salon after the salon learned that the deposit was missing, and that Defendant continued to be employed by the salon. However, the jury heard testimony that Defendant was interviewed by the salon, Defendant called the police and reported the missing deposit to the police, and that Defendant continued to work at the salon even after the missing deposit. Any additional testimony would have been cumulative and Defendant has therefore failed to establish that any deficiency in counsel's performance in this regard is prejudicial. *See State v. Kent*, 2006-NMCA-134, ¶¶ 22-24, 140 N.M. 606, 145 P.3d 86 (holding that counsel's failure to give required notice, causing the district court to exclude cumulative evidence, did not prejudice the defendant's defense because it was cumulative of the defendant's testimony).

Lastly, we address Defendant's argument that she received ineffective assistance of counsel because counsel did not object to Officer Fuller's testimony regarding the polygraph exam. Although, we have held that the testimony was an impermissible comment on Defendant's right to remain silent, Defendant has failed to establish prejudice under the *Strickland* standard. As we discussed in our fundamental error analysis, the prejudicial nature of the testimony regarding the polygraph exam was minimal due to the limited time frame, the State did not use it in closing to argue that Defendant did not show up to the polygraph because of the guilt,

18

and Defendant explained why she did not take the polygraph exam. Coupled with the strong evidence presented by the State, we cannot say that the failure to object to the testimony was "so serious as to deprive the defendant of a fair trial[.]" *Strickland*, 466 U.S. at 687.

Defendant has not established a prima facie case of ineffective assistance of counsel for any of the instances she has alleged. Our ruling does not foreclose Defendant from filing a habeas corpus petition to pursue her claim of ineffective assistance of counsel. *See State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 (noting preference of habeas corpus proceeding when record on appeal does not establish prima facie case of ineffective assistance of counsel).

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**J. MILES HANISEE, Judge**