This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38309**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**CHRISTOPHER OWENS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BACA, Judge.**

**{1}**    Defendant Christopher Owens appeals his convictions for second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994), and possession of a controlled substance (cocaine), contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2021). On appeal, Defendant argues that (1) the district court abused its discretion when it ruled that the State could specifically name his previous felony convictions during impeachment; (2) because of that ruling, the district court effectively denied Defendant's right to testify at his trial; (3) the New Mexico Court of Appeals

should opine on whether the New Mexico Rules of Evidence should be modified to prohibit naming Defendant's prior convictions; and (4) the district court committed reversible error by denying Defendant a self-defense jury instruction. In addition, this Court asked the parties to address the issue of whether the case is final and properly before this Court.

## BACKGROUND

**{2}**     Because this is a memorandum opinion and because the parties are familiar with the facts and procedural history of the case, it is unnecessary for us to repeat them here, except as required for our analysis.

## DISCUSSION

### I.     This Case Is Properly Before the Court of Appeals

**{3}**     We preliminarily address an issue this Court raised in its calendar notice, in which we directed the parties to brief "(1) the distinction between severance of charges and bifurcation of proceedings; and (2) whether this case is final for purposes of appeal where there is a pending charge that is proceeding in the same district court case that is before us on appeal." *Cf. State v. Boblick*, 2004-NMCA-078, ¶ 6, 135 N.M. 754, 93 P.3d 775 ("In the absence of a final order, the [district] court retained jurisdiction over the entirety of the bifurcated proceeding, and this Court lacked appellate jurisdiction over the purported appeal."). We did so because it was apparent Defendant's charge for felon in possession was unresolved at trial, which could affect finality had the charge been bifurcated and not severed.

**{4}**     In criminal cases, "an appeal may be taken by the defendant to the [S]upreme [C]ourt or [C]ourt of [A]ppeals . . . within thirty days from the entry of any final judgment[.]" NMSA 1978, § 39-3-3(A)(1) (1972). "[T]he judgment is final for the purpose of appeal when it terminates the litigation on the merits and leaves nothing to be done but enforcement. A sentence must be imposed to complete the steps of the prosecution." *State v. Durant*, 2000-NMCA-066, ¶ 5, 129 N.M. 345, 7 P.3d 495 (alteration, emphasis, omission, internal quotation marks, and citation omitted). Generally, a "judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the [district] court to the fullest extent possible." *Id.* ¶ 7 (internal quotation marks and citation omitted). This has been referred to as the "last act" requirement of the finality rule. *Id.*

**{5}**     The original charges against Defendant were murder, felon in possession of a firearm, tampering with evidence,[1] and trafficking in a controlled substance; however, the parties agree and the record shows that the felon in possession of a firearm charge was severed, and not bifurcated. Therefore, his convictions are sufficiently final for purposes of appeal, and we proceed to address Defendant's contentions. *See, e.g., State v. Catt*, 2019-NMCA-013, ¶¶ 1, 36, 435 P.3d 1255 (determining that the defendant

---

[1]Defendant was found not guilty of tampering with evidence.

was "sufficiently aggrieved" to permit immediate appeal from the judgment and sentence on her conviction despite there being several pending charges from the underlying case subject to retrial).

## II. The District Court Did Not Commit Reversible Error in Applying Rule 11-609 NMRA

**{6}** Defendant concedes the State was permitted to impeach him by evidence of his prior felony convictions but asserts that the district court erred by deciding that the State could specifically name his previous felony convictions during impeachment. *See* Rule 11-609(A)(1)(b) (impeachment by evidence of a criminal conviction). In support of his position, Defendant makes two arguments: (1) the district court did not conduct the appropriate balancing test and relied solely on a jury instruction to make its decision, and (2) even had the district court weighed the probative value of permitting the State to name Defendant's prior felonies during impeachment against its prejudicial effect, the nature of his past convictions warranted exclusion.

**{7}** Assuming without deciding that the district court improperly applied Rule 11-609, we conclude that any error was harmless. "When an error is preserved, we review for harmless error[.]" *State v. Astorga*, 2015-NMSC-007, ¶ 42, 343 P.3d 1245. "Absent a constitutional violation, we look to whether there is a reasonable probability that the error affected the verdict." *Id.* ¶ 43. "[The d]efendant bears the initial burden of demonstrating that he was prejudiced by the error." *Id.* "To put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial." *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215.

**{8}** As we noted above, evidence related to Defendant's prior conviction was admissible to impeach his credibility consistent with Rule 11-609. Defendant only contests whether the prosecution could impeach him using the specific names of his prior felonies. Therefore, we must determine the effect of the refusal of the district court to limit the use of the evidence—naming Defendant's prior felonies—to its proper scope. *See Astorga*, 2015-NMSC-007, ¶ 43. Significantly, in this case, we are not called upon to discuss improperly admitted evidence because Defendant never testified. As a result, the jury was *not* informed of the prior felony convictions, and Defendant was *not* impeached using the specific names of his prior felonies. Therefore, there was no direct impact on the jury from the district court's ruling. Nonetheless, Defendant seeks reversal of his conviction on appeal, arguing that the challenged ruling effectively deprived him of his right to testify in his defense.

**{9}** A criminal defendant has a right to testify at their trial. *State v. Smith*, 2019-NMCA-027, ¶ 14, 458 P.3d 613. It is ultimately up to the criminal defendant to decide whether to testify, regardless of their attorney's advice. *Id.* In this case, Defendant chose not to testify. But, to the extent Defendant argues on appeal that he did not testify because the district court ruled that he could be impeached by naming his prior felonies,

he raised no such claim at trial, and there is nothing in the record supporting his claim that he would have testified but for the district court's ruling.

**{10}** At trial, defense counsel stated, "We are making the decision as to whether or not [Defendant] should take the stand, and in order to make that decision, we are asking for rulings from the court about the admissibility of his prior conviction." Defendant sought a ruling "in order for [Defendant] to make that decision [to testify]." This does not suggest Defendant was "denied his right to testify," as Defendant contends, but rather that Defendant was in the strategic process of deciding whether to testify. A defendant has no right to testify free from the same sorts of cross-examination permitted for any other witness. "When the defendant takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined." *State v. Foster*, 1998-NMCA-163, ¶ 13, 126 N.M. 177, 967 P.2d 852 (alteration, internal quotation marks, and citation omitted).

**{11}** Without additional support in the record that Defendant raised a claim and that he was "denied the right to testify at his own trial" and that his choice was based exclusively upon the district court's ruling regarding the names of his prior felony convictions, we will not reverse on this issue because there was no reasonable probability the assumed error affected the verdict. *See State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110; *see also State v. Barr*, 2009-NMSC-024, ¶ 54, 146 N.M. 301, 210 P.3d 198 ("[N]on-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence at trial, that it is reasonably probable that the jury's verdict would have been different but for the error."), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37. We, therefore, conclude the district court's error was harmless.

**{12}** Lastly, Defendant seeks this Court's support for his belief that Rule 11-609 should be amended. We decline his request in this regard. As Defendant concedes, we do not have jurisdiction to amend rules. That power is reserved to our Supreme Court. *See State v. Pieri*, 2009-NMSC-019, ¶ 20, 146 N.M. 155, 207 P.3d 1132.

### III.    Defendant Was Not Entitled to a Self-Defense Jury Instruction

**{13}** We next address whether the district court erred by refusing the request of Defendant for a self-defense instruction for murder. Defendant argues that there was sufficient evidence to support a self-defense jury instruction. We disagree.

**{14}** "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. This Court reviews a defendant's requested instruction "in the light most favorable to the giving of the self-defense or defense of another instruction." *State v. Sandoval*, 2011-NMSC-022, ¶ 2, 150 N.M. 224, 258 P.3d 1016 (alteration, internal quotation marks, and citation omitted). We review Defendant's arguments for reversible error because Defendant preserved them. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{15}** A defendant is only entitled to a self-defense instruction if the evidence demonstrates that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *State v. Swick*, 2012-NMSC-018, ¶ 60, 279 P.3d 747 (internal quotation marks and citation omitted). We have described the first two requirements as "subjective in that they focus on the perception of the defendant at the time of the incident." *State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477. In contrast, "the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *Id.*

**{16}** Where there is "enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense [such that] . . . reasonable minds could differ, the instruction should be given." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170 (citation omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s]." *Swick*, 2012-NMSC-018, ¶ 60 (alteration in original) (internal quotation marks and citation omitted). For the reasons that follow, we conclude (1) that Defendant did not present sufficient evidence that the killing resulted from Defendant's fear of an apparent danger of immediate death or great bodily harm, and (2) that Defendant did not act reasonably when he killed Timothy Baca (Victim). The district court did not err in refusing a self-defense instruction.

**{17}** Here, Defendant argues that the jury could have inferred from the evidence presented at the trial that Defendant was in fear for his life and that the killing resulted from that fear. As previously noted, Defendant did not testify at his trial. But he points to the following facts in support of the inference that he was in fear for his life when he shot and killed Victim. First, in the video of his statement to the police, the defendant told them that he was getting "beat-up" and used self-defense to protect himself. Second, Defendant's witness, David Segal, heard two gunshots and arguments between the shots. This, Defendant argues, suggests a fight was still ongoing, and the second, not the first, gunshot killed Victim.

**{18}** The district court denied the self-defense instruction. It found no evidence from which the jury could reasonably infer that Defendant believed Victim threatened him with death or great bodily harm.

**{19}** The district court considered Defendant's first argument—Defendant's statement of self-defense to the police—in support of a self-defense instruction. Yet, it concluded that this statement to the police did not explain how he was put in fear of death or great bodily harm and forced to use deadly force, which is required before a court can instruct a jury on self-defense. *See* UJI 14-5171 NMRA. We agree.

**{20}** While Defendant told the police that he was getting "beat-up" and used self-defense, Defendant did not tell them that he feared great bodily harm or death from Victim's actions. Defendant concedes this point in his brief in chief:

[Defendant's] fear, and that the killing was a result of that fear, is established by putting into the most favorable light the fact that he told others he was being beaten and had to act in self-defense. He did not have the legal acumen to lay out an element-by-element analysis when he told people the he needed to act in self-defense. As noted above, he was denied a meaningful opportunity to testify at trial and fill in the blanks.

**{21}** Defendant argues the reason he could not establish the elements of the self-defense instruction is that he was "denied a meaningful opportunity to testify." We reject that argument. Even viewing the evidence in the light most favorable to the giving of the self-defense instruction, there is no evidence in the record that Defendant was in in fact put in fear of great bodily harm or death because of Victim's actions. To the extent Defendant argues that Defendant could have used an imperfect self-defense defense, this argument is undeveloped, and we decline to review it. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be").

**{22}** Concerning Defendant's second argument—the testimony of Mr. Segal that he heard arguing after the first shot and before the second shot—in support of a self-defense instruction, the district court found this argument did not support the giving of a self-defense instruction. We again agree.

**{23}** The district court found that Mr. Segal was not an eyewitness and could not identify the voices of the individuals he heard. Accordingly, we reject Defendant's contention that Mr. Segal's testimony "should be viewed in a light favorable to the defense theory that the first shot was not the one that killed [Victim]."

**{24}** As Defendant concedes, Mr. Segal was not an eyewitness to the interactions amongst the individuals outside the vehicle at the time of the killing and could not identify the voices of those arguing. Moreover, four eyewitnesses testified that the first shot killed Victim, not the second. The district court found, under these circumstances, the jury would be asked to speculate about who was involved in the argument before and after the gunshots. We agree.

**{25}** Where "the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind on whether a defendant . . . did act in self-defense[,]" the instruction should not be given. *State v. Sutphin*, 2007-NMSC-045, ¶ 22, 142 N.M. 191, 164 P.3d 72 (omission in original) (internal quotation marks and citation omitted). Because we do not find evidence on which reasonable minds could differ as to the subjective or objective element of self-defense and considering Defendant's concession that he was unable to "lay out an element-by-element [self-defense] analysis," we conclude that the district court did not err in denying the request of Defendant for a self-defense instruction.

**CONCLUSION**

**{26}**    For the reasons stated above, we affirm.

**{27}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge**