This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41898**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**JUAN EDWARDS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Kathleen McGarry Ellenwood, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief, pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to the Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from his conviction for two counts of criminal sexual penetration (CSP) in the third degree, contrary to NMSA 1978, Section 30-9-11(F) (2009). Defendant contends that his convictions violate his right to be free from double jeopardy. [BIC 10] Specifically, Defendant asserts that the actions underlying his convictions were, "at most one continuous assault." [BIC 10]

**{3}** "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Where factual issues are intertwined with the double jeopardy analysis, we view the evidence in the light most favorable to the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict. *State v. Jackson*, 2020-NMCA-034, ¶ 27, 468 P.3d 901. Defendant's assertion of error requires a unit of prosecution analysis. *See State v. Melendrez*, 2014-NMCA-062, ¶ 6, 326 P.3d 1126 (stating that a "unit of prosecution" double jeopardy case is one in which the defendant is charged with multiple violations of the same statute). A unit of prosecution analysis involves two steps. *See State v. Benally*, 2021-NMSC-027, ¶ 12, 493 P.3d 366. First, we consider the statute at issue to determine whether the Legislature has defined the unit of prosecution. *Id.* ¶ 13. Our Supreme Court has already determined that Section 30-9-11 is ambiguous as to the unit of prosecution. *See Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624. Accordingly, we turn to the second step of our analysis, which is whether the defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute. *Benally*, 2021-NMSC-027, ¶ 17. In assessing whether a defendant's acts were sufficiently distinct, our courts consider six factors: temporal proximity of the acts, the location of the victim, the existence of intervening events, the sequence of the acts, the defendant's intent, and the number of victims. *See Herron*, 1991-NMSC-012, ¶ 15.

**{4}** Here, there was only one victim, and her location remained the same throughout the course of events. With regard to the sequence of events, Victim testified that when she woke up, she felt fingers on her labia. [BIC 6] The boxer shorts she had been sleeping in were pushed to the side, and she first felt one finger, then five, then a tongue on her labia and in her vagina. [BIC 7; 3/14/2023 CD 10:59:26-11:00:00, 11:01:13] Though unsure how long these events continued, Victim testified that it felt like it lasted "a really long time." [BIC 7; 3/14/2023 CD 11:01:15] At one point, Victim's friend got up to use the bathroom, at which point the individual removed their fingers and stopped touching Victim. [BIC 7; 3/14/2023 CD 11:01:31] Victim's friend returned to bed and went back to sleep, and Victim testified that, at that point "it continued." [3/14/2023 CD 11:02:05]

**{5}** Defendant asserts that this evidence is only indicative of one continued assault, and that there was nothing to constitute an intervening event in the assault. [BIC 11] According to Defendant, the fact that Victim's friend got up to use the restroom was "only a temporary pause" and none of the evidence was indicative of Defendant having "formed a new intent." [BIC 11] We disagree.

**{6}** Victim's testimony establishes sufficiently distinct acts. Defendant placed his tongue on Victim's labia and in her vagina, which was the basis for cunnilingus as alleged in Count 2. *See* UJI 14-982 NMRA (defining "cunnilingus" as "the touching of the edge or inside of the female sex organ . . . with the tongue"); UJI 14-943 NMRA (identifying the essential elements of CSP). [1 RP 181] When Victim's friend awoke and went to the restroom, Defendant stopped touching Victim and refrained from touching Victim until the friend returned to the bed and went back to sleep. [BIC 7] These facts serve to distinguish the cunnilingus in Count 2 from the digital penetration in Count 1 that occurred after Victim's friend had fallen back asleep. *See Herron*, 1991-NMSC-012, ¶ 15 (identifying temporal proximity and intervening events as factors indicative of distinctness); *see also* § 30-9-11(A) (establishing sexual intercourse and cunnilingus as distinct means of committing CSP). Moreover, the timing of Defendant's actions was such that a jury could reasonably infer a shift in Defendant's intentions—from sexual gratification during the touching to concealment while the friend was awake. *See Herron*, 1991-NMSC-012, ¶ 15 (identifying the defendant's intent as a factor in a distinctness analysis); *see also State v. Valverde*, ___-NMCA___, ¶ 13, ___ P.3d ___ (A-1-CA- 40146, Nov. 18, 2024) (reasoning that the evidence suggested the defendant's intent to pursue his own sexual gratification was consistent throughout his various contacts with the victim), *cert. denied* ( S-1-SC-40704, March 11, 2025); *see generally State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495 ("Intent can rarely be proved directly and often is proved by circumstantial evidence.").

**{7}** Defendant also points to *State v. Urquidi-Martinez*, ___-NMCA-___, ___-P.3d-___ (A-1-CA-41049, Dec. 11, 2024), *cert. granted* (S-1-SC-40730, Feb. 11, 2025), as support for his position that the "minimal" amount of testimony Victim provided makes it improper for this Court to conclude Defendant's actions were separate and distinct. [BIC 13] Defendant's reliance on *Urquidi-Martinez* is not persuasive. In *Urquidi-Martinez*, there was no evidence regarding the timing, location, or sequence of the events, the details given in victim's testimony were extremely limited, and the victim testified that she did not remember one of the penetrations that was the basis for one of the charges against the defendant. *Id.* ¶¶ 15-16. Here, though Victim was unsure how long the events continued, she was able to specifically describe a sequence of events, where they took place, and an intervening event. Accordingly, the facts in this case are sufficient to establish that Defendant's assault on Victim was made up of two distinct acts. *See Benally*, 2021-NMSC-027, ¶ 23 (stating that "if we can reasonably infer that a defendant's acts were distinct under the applicable indicia of distinctness, then we will presume that the defendant has not received more punishments than were statutorily authorized").

**{8}** For the foregoing reasons, we affirm Defendant's convictions.

**{9}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**